Jeffrey M. ARLEN, Petitioner-Appellant,

v.

Hon. Melvin LAIRD, Secretary of Defense, et al., Respondents-Appellees.

No. 58, Docket 71–1446.

United States Court of Appeals,
Second Circuit.

Argued Sept. 14, 1971.

Decided Oct. 28, 1971.

Michael N. Pollet, New York City, for petitioner-appellant.

Joseph P. Marro, Asst. U. S. Atty., for respondents-appellees.

Before MOORE, SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from an order of the District Court for the Southern District of New York, 325 F.Supp. 1334, dismissing appellant's petition for a writ of habeas corpus on the ground that the court lacked jurisdiction over the person of the Commanding Officer of the United States Army Reserve Components Personnel Center, who was held to be the proper respondent. The district court dissolved a stay of the order requiring petitioner-appellant to report for active duty. We reverse.

Petitioner is a physician, presently holding the rank of First Lieutenant in the United States Army Reserve. In 1969, while interning at a hospital in San Francisco, he enlisted in the Medical Corps of the United States Army Reserve at the headquarters of the Sixth United States Army, Presidio, of San Francisco. He has never been assigned to a military unit for active duty nor has he been attached to a specific reserve component. In military parlance, petitioner is an unattached, inactive reservist. His nominal commanding officer is the Commanding Officer of the Reserve Officer Components Personnel Center, located at Fort Benjamin Harrison, Indiana. That Center is the administrative clearing-house for all assignments, orders, and notices affecting unattached, inactive reservists such as petitioner. All such material directed to petitioner is issued by the Commanding Officer of the Center and sent to petitioner via the Commanding Officer, Sixth United States Army.

In October, 1969 petitioner completed his internship and returned to New York where his family lives. Since November, 1969, he has resided and carried on his practice in this judicial circuit, first in Long Island and, since January 1970, in Manhattan. During this period petitioner at all times continued in his status as an unattached, inactive reservist. In August, 1970 petitioner filed an application with the Commanding Officer, Sixth United States Army, for discharge from the United States Army Reserve. Petitioner advanced as the basis for his application his conscientious objection to war in any form. Because petitioner was then residing within the geographical jurisdiction of the First United States Army, the Commanding Officer of the Sixth Army forwarded the application to the Commanding Officer of the First Army for administrative action. In accordance with the provisions of Army Regulation 135–25, petitioner was interviewed in New York City during October and November, 1970, by the officers designated in the Army Regulations, all of whom, petitioner alleges, recommended his discharge. On December 29, 1970 petitioner was ordered by the Commanding Officer of the Center at Fort Benjamin Harrison to report on February 5, 1971 to Fort Polk, Louisiana for active duty. On January 8, 1971 the Commanding Officer of the Sixth Army forwarded petitioner's application for discharge and the recommendations of the interviewing officers to the Commanding Officer of the Center, together with his own recommendation that the discharge be granted. On February 3, 1971, the conscientious objector discharge review board of Fort Benjamin Harrison, which reviews reserve officers' applications for discharge, denied petitioner's application. Petitioner thereupon filed in the United States District Court for the Southern District of New York, the application now under consideration. The district court issued an order to show cause and stayed petitioner's removal from the jurisdiction pending a determination of his petition. On April 21 the district court denied the petition.

In denying petitioner's application the district court relied upon Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971). Schlanger involved the unusual situation of a serviceman on active duty assigned to a duty station outside the territorial jurisdiction of his commanding officer. In that case the petitioner, assigned to an Air Force unit at Moody Air Force Base in Georgia, applied for and received from his com-

manding officer a temporary duty assignment at Arizona State University. While at that duty station, he filed a petition for *habeas corpus* in the United States District Court in Arizona. The petition was denied on the ground that the only respondent with custody over this active duty serviceman, the Commanding Officer of Moody Air Force Base, was not within the territorial jurisdiction of the Arizona District Court. The Supreme Court affirmed. See 401 U.S. at 490–491, 91 S.Ct. 995.

 A serviceman in the position of petitioner in the present case is "in custody" in this jurisdiction within the meaning of 28 U.S.C. § 2241(c) (1970). See United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969); Hammond v. Lenfest, 398 F.2d 705 (2d Cir. 1968); Donigian v. Laird, 308 F. Supp. 449, 451–452 (D.Md.1969), discussed *infra*. The only question presented, therefore, is whether the district court had jurisdiction under 28 U. S.C. § 2241(a) (1970) to issue the writ when the petitioner is an unattached reservist within the court's territorial jurisdiction but the commander of all such reservists is not physically within that jurisdiction. The Supreme Court was faced in *Schlanger* with a situation involving a serviceman on active duty and under specific orders who was in the rare position of not being within the same territorial jurisdiction as his commanding officer. Before the decision in *Schlanger* this court had held that a serviceman on active duty outside the territorial jurisdiction of his commanding officer cannot petition for the writ in the jurisdiction in which he happens to be, but must proceed in the jurisdiction where his commanding officer is present. United States ex rel. Rudick v. Laird, 412 F.2d 16 (2d Cir.), cert. denied 396 U.S. 918, 90 S.Ct. 244, 24 L. Ed.2d 197 (1969). See Feliciano v. Laird, 426 F.2d 424, 427 n. 4 (2d Cir. 1970). The specific question of the unattached reservist has not been decided

in this Circuit. *Schlanger*, as we view its holding, does not preclude a district court, with jurisdiction over the territory in which an unattached reservist is in custody and in which he resides and works, from entertaining his petition for *habeas corpus* solely because his nominal "commanding officer" is not physically present in the jurisdiction. The Supreme Court reserved decision on this precise question, 401 U.S. at 489, 491 n. 5, 91 S.Ct. 995 and cited, apparently with approval, Donigian v. Laird, 308 F.Supp. 449 (D.Md.1969). *Donigian* involved the same question as is presented by our case: whether, in a *habeas corpus* proceeding commenced by an unattached reservist, the Commanding Officer of the Reserve Officer Components Personnel Center in Indiana could be sued in the district court of the district in which the reservist resided. It was decided in favor of such exercise of jurisdiction. We reject the limited interpretation of *Schlanger* adopted in Strait v. Laird, 445 F.2d 843 (9th Cir. 1971); Lipinski v. Resor (1st Cir. July 14, 1971).

The practical circumstances of the serviceman on active duty and the unattached reservist are sufficiently different to warrant different results in deciding the question of jurisdiction. Usually a serviceman and his commanding officer are physically present within the same territorial jurisdiction. *Schlanger* involved an unusual situation of detached, temporary duty; *Rudick* and *Feliciano* involved servicemen on leave from or in transit to active duty stations. In those cases the servicemen were directly under orders of immediate commanding officers, and their physical separation from their commanding officers was temporary. The unattached reservist such as petitioner does not in fact have a direct commanding officer. The title of "commanding officer" given to the commander of the "centrally located, nationwide record keeping center" at Fort Benjamin Harrison is hardly more than a convenient fiction. See Hansen, The Jurisdictional Bases of

Federal Court Review of Denials of Administrative Discharges from the Military I, 3 Sel.Serv.L.Rep. 4001, 4006 n. 60 (1971). Petitioner has never been in the same jurisdiction as his nominal "commanding officer." Petitioner's presence within the jurisdiction of the District Court for the Southern District of New York is neither temporary as in *Rudick* and *Feliciano* nor sham for purposes of forum shopping. Since November, 1969 petitioner has worked and resided here. Whatever contact the commanding officer of the Center has had with petitioner has been in New York. The respondent had custody of petitioner in New York; petitioner initiated his application for discharge from New York and the required interviews were conducted here; all orders were sent to petitioner in New York. At no time was he required or requested to go to Fort Benjamin Harrison. Unlike the petitioners in *Schlanger, Rudick,* and *Feliciano,* the military has never required petitioner to be in the same jurisdiction as his "custodian." In those cases it was sensible to require that the petitions be filed in the jurisdictions where the petitioners normally resided, worked, were in custody, and were subject to orders. But where, as here, petitioner has never been within the same jurisdiction as his "commanding officer" and where for almost two years any contacts petitioner had with his commanding officer and the military have occurred within this jurisdiction, we believe that, if it is necessary to find that the nominal custodian is "present" in the jurisdiction, respondent's contacts with petitioner in New York are sufficient to be termed "presence."

It would be quite unreasonable and inequitable to read § 2241(a) as requiring this petitioner to file for the writ in a distant jurisdiction in which he has never been and with which he has no real contacts at all. Such a requirement would entail needless expense and inconvenience.

There is no justification for requiring all unattached reservists to resort to the district court in Indiana having jurisdiction over Fort Benjamin Harrison. Compare Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948) *with* 28 U.S.C. § 2255 (1970) discussed in United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952) *and* 28 U.S.C. § 2241(d) (1970). Quite unlike a commanding officer who is responsible for the day to day control of his subordinates, the commanding officer of the Center is the head of a basically administrative organization that merely keeps the records of unattached reservists. To give the commanding officer of the Center "custody" of the thousands of reservists throughout the United States and to hold at the same time that the commanding officer is present for *habeas corpus* purposes only within one small geographical area is to ignore reality.

The Government has no substantial interest in having a district court in Indiana (or Louisiana) hear this petition. See Note, Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1160–61 (1970). The Government has abundant counsel in this jurisdiction and records can easily be forwarded from Indiana. To assert, as the Government has, that petitioner should first comply with his orders to report to Fort Polk and then petition for the writ in Louisiana, demonstrates the lack of genuine interest the Government and the Army have in requiring the unattached reservist to petition in Indiana. The suggested procedure would force the petitioner to leave his home and his work in order to contest the power of the army to force him to do so.

Reversed and remanded with directions to entertain the petition.