**Wilson Edward STILL, Jr., Plaintiff,**

**v.**

**COMMANDING OFFICER, U. S. ARMY RESERVE COMPONENTS PERSONNEL CENTER et al., Defendants.**

**Civ. A. No. 71–616.**

United States District Court,
N. D. Alabama,
W. D.

Nov. 17, 1971.

618

Jack Drake, Drake, Knowles & Still, University, Ala., for plaintiff.

Wayman G. Sherrer, U. S. Atty., Henry I. Frohsin, Ass't. U. S. Atty., Birmingham, Ala., for defendants.

## MEMORANDUM OF OPINION

POINTER, District Judge.

Plaintiff, a Second Lieutenant in the U.S. Army Reserve, has had his call to active duty delayed for some three years while he attended law school. Claiming that opposition to war "coalesced" in early 1970, he submitted through appropriate military channels an application, dated December 16, 1970, for discharge as a "conscientious objector" (a "C.O.") under Army Regulations 135–60. In this proceeding he challenges the action taken by the military authorities on that application.

The Magistrate, to whom the complaint was initially referred by the court, concluded that, as urged by defendants, the cause should be dismissed for lack of jurisdiction, relying heavily on Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971). At plaintiff's request the court delayed action on the Magistrate's report, initially to allow plaintiff to file an additional brief, and subsequently to await the filing of the government's reply brief on the application for writ of certiorari in Strait v. Laird, U.S. Supreme Court docket No. 71–83. The brief in *Strait* signalled no change of position by the government; but in the interim the Second Circuit has issued its opinion in Arlen v. Laird, 451 F.2d 684 (1971) finding jurisdiction under similar circumstances and reversing the decision of the district court also cited in the Magistrate's report. For the reasons hereafter specified, the court concludes—though not with great confidence—that there is jurisdiction in this forum to determine the plaintiff's complaint under the particular facts here involved.

## I. HABEAS CORPUS.

The typical means by which C.O. discharge cases have been brought to judicial forums has been the petition for habeas corpus, positing jurisdiction on 28 U.S.C. § 2241. Plaintiff here seeks such a writ, claiming (1) that his subjection to potential military orders [1] is such a limitation on his freedom as to constitute a restraint within the evolving concept of "custody" [2]; and (2) that this restraint has been made unlawful or wrongful by virtue of the Army's refusing, without any basis in fact, to grant him a discharge pursuant to its own regulations. Plaintiff, whose complaint alleges that he is a resident of this district and whose application for discharge shows that he has continuously

1. Still is scheduled to report for active duty at Fort Benning, Georgia, on February 17, 1972, but apparently has not yet received his formal orders.

2. See Schlanger v. Seamans, 401 U.S. at 491, and Note 5, 401 U.S. at 491, 91 S.Ct. 995. Several circuits, though not the Fifth, have permitted *habeas* proceedings by Reservists not on active duty. Hammond v. Lenfest, 398 F.2d 705 (2nd Cir. 1968); Silberberg v. Willis, 420 F.2d 662 (1st Cir. 1970); Bohnert v. Faulkner, 438 F.2d 747 (6th Cir. 1971). Cf. United States ex rel. O'Hare v. Eichstaedt, 285 F.Supp. 476 (N.D.Cal.1967).

resided in Alabama since 1958, satisfies the requirement that a *habeas* petitioner be within the territorial jurisdiction of the court whose jurisdiction is sought to be invoked. Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948); also see Schlanger v. Seamans, 401 U.S. at 489–490, 91 S.Ct. 995 [3].

■ The problem is that none of the defendants is a resident of this district.[4] Schlanger v. Seamans, *supra.* There are obvious factual differences between the case *sub judice* and *Schlanger,* as cogently pointed out by the Second Circuit in Arlen v. Laird, *supra.* Notwithstanding the pragmatic logic in *Arlen,* this court finds itself—though perhaps subject to the criticism that it has been entranced by the words of the *Schlanger* opinion, rather than its direct holding— in agreement with the conclusion of the other three Circuits which have considered this question. Strait v. Laird, 445 F.2d 843 (9th Cir. 1971); Lipinski v. Resor, (1st Cir. July 14, 1971, docket No. 490); Robin v. Hoffman (3rd Cir. July 2, 1971, docket No. 71–1581).

Although not explicit, the opinion in *Schlanger* apparently holds that absence of any custodian or commander results in a lack of jurisdiction over the subject matter of a *habeas* petition, and not merely a lack of jurisdiction over the person of the defendants, which would be waivable. While *Schlanger* does not necessarily rule out the applicability of the second sentence of 28 U.S.C.A. § 1391(e) as a means for effecting service of process in a *habeas* proceeding, it certainly suggests such a conclusion and without question refuses to utilize the first sentence of § 1391(e) as an expansion device for § 2241(a) [5]. In any event, when the conclusion is reached in *Schlanger* that "even under the minority view in Ahrens v. Clark, the District Court in Arizona has no custodian within its reach against whom its writ can be spent" (401 U.S. at 491, 91 S.Ct. at 998), it seems clear that a like conclusion must be reached in the case *sub judice.* Accordingly, this court has no jurisdiction to hear the plaintiff's complaint as a *habeas corpus* proceeding.

## II. MANDAMUS.

■ The plaintiff also seeks to bring this action as in the nature of mandamus, relying on 28 U.S.C.A. § 1361 for jurisdiction of the subject matter and on 28 U.S.C.A. § 1391(e) (second sentence) for jurisdiction of the persons. This is a contention not dealt with in *Schlanger* and not often discussed in C.O. discharge cases. As stated by the Fifth Circuit, mandamus is "an extraordinary remedy which should be utilized only in the clearest and most compelling of cases," and requires "(1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969). The court concludes however, on the basis of Carter v. Seamans, 411 F.2d at 775, that it does have jurisdiction of the subject matter and of the parties for plaintiff's mandamus action

3. "The question * * * is whether any * * * one in the chain of command, *as well as the person detained,* must be in the territorial jurisdiction of the District Court. * * * [P]etitioner [*Schlanger*] is within the territorial jurisdiction of the District Court * * *." 401 U.S. at 489–490, 91 S.Ct. at 997 (emphasis added).

4. The defendants are the Commanding Officer of the USARC Personnel Center at Fort Benjamin Harrison, Indiana, who is named in the complaint as plaintiff's immediate commanding officer; the Secretary of the Army; and the Secretary of

Defense. According to the file it appears that the Army considers a staff officer at Fort Benjamin Harrison (the Chief of the Delayed Officer Management Division) as plaintiff's immediate commanding officer.

5. In addition to the legislative history noted by Justice Douglas, 401 U.S. at 490, n. 4, 91 S.Ct. 995, this result may be dictated by treating the language in § 2241(a) permitting the writ to issue (only) "within their respective jurisdictions" as meeting the "except as otherwise provided by law" qualification contained in the first sentence of § 1391(e).

and that the requirements indicated go rather to the issue of whether this court should grant all or any part of the relief sought.

Typically mandamus directed to military officials on C.O. discharge cases is inappropriate due to the third requirement—the availability of another remedy, i. e., the writ of habeas corpus. In the instant case, however, that remedy is not available in this forum; and indeed there is serious doubt that it is available in another forum. As previously noted (Note 3, *supra*) *Schlanger* reaffirms the *habeas* requirement of Ahrens v. Clark that a petitioner be in the territorial jurisdiction of the court in which the petition is filed. Here Still is not in Indiana and apparently has never been a resident of Indiana. He has no permanent duty station in Indiana which might constructively amount to his presence there—only his records and their custodian are there, and the military has concurred in his being in Alabama for some three years—certainly more than a temporary visit. While the "restraints" on his freedom may emanate from Indiana, it does not seem that thereby he would be deemed present in Indiana, any more than the hypothesized custody of Schlanger in Arizona constituted the presence of the custodian in Arizona. See 401 U.S. at 491, 9 S.Ct. 995. Nor would the filing by Still of a complaint in Indiana be sufficient to constitute his presence there. See Ahrens v. Clark, *supra*. Accordingly, it is doubtful that Still can successfully file *habeas* proceedings in Indiana (or any other district court), at least without physically moving to such forum—which would be a bizarre requirement, particularly in view of his scheduled entry on active duty in Georgia. In summary, the court concludes that Still should not be blocked from mandamus proceedings on the premise that other adequate remedies are available. *Cf.* Carter v. Seamans, *supra*.

■■ In addition to the ultimate relief sought (discharge), Still complains that (1) he did not get a full and fair hearing before the "0–3 interview officer" (AR 135–25, paragraph 7a(3)); (2) the report of such officer (on information and belief) was factually incorrect and concealed the truth; (3) his affidavit challenging such interview and report was (on information and belief) not part of his file; (4) he has not received a copy of his C.O. file; and (5) he was not given an adequate explanation of the reasons why his application was denied. Through the instant proceedings, in which his C.O. file was submitted by the defendants, Still has already received any relief as to (4) and (5) above to which he might be entitled by mandamus, and accordingly such items are moot.

■ Still's charge that the interviewing officer's report was factually incorrect, made on information and belief at a time when Still had not seen the report, turns out to have been a wasted "shot in the dark"—for, other than indicating the friendly and close relationship with Still of one of the writers of a supporting letter (which may or may not be true, but which even if untrue would not be prejudicial to Still), it does little more than highlight certain parts of the application for discharge. Still accurately predicted that his affidavit challenging the interview would not be part of his file—at least it is not included in the certified file submitted by defendants to the court—but the question remains as to the effect of such omission. The affidavit in essence complains that the interviewing officer did not ask enough questions of Still and did not attempt to understand Still's views. It would be inappropriate—particularly on mandamus proceedings—for a court to dictate the questions which must be asked by an interviewing officer who, under the applicable regulations, is to "make such other inquiries into the merits of the application as he considers appropriate." There is no charge in the affidavit (nor is any made in the complaint) that Still was not permitted "to be heard in support of his ap-

plication" (except by doubting whether the interviewing officer "heard" petitioner with concern and understanding) as required by the regulations. While the report may suffer from incompleteness, the regulations do not require that it be a full narrative—indeed only that it contain the interviewing officer's "recommendations and reasons therefor." The charge in the complaint (on information and belief) that the report was "designed to conceal the truth" is either a challenge to the interviewing officer's sincerity and integrity or to his failure to include information favorable to Still's position. As indicated, there is no duty under the regulations (and the court sees no lack of due process thereby) for such information to be submitted—and indeed the theme of the procedure is for the petitioner to "make his case" through his application and supporting letters. As to the first point: a wholly unmanageable system would result if the courts were to require review boards or commanders to determine the sincerity and credibility of officers appointed for the purpose of determining, *inter alia*, similar characteristics of an applicant. In summary, the court concludes that the plaintiff is not entitled to mandamus relief regarding any of the five specific items indicated above.

■■ The question remains whether it is possible on mandamus to inquire into the ultimate relief sought, *i. e.*, the discharge. Of course, mandamus traditionally does not lie to challenge the performance of a discretionary duty, 55 C. J.S. Mandamus § 63, and the enactment of 28 U.S.C. § 1361 was not intended to change that proposition. See Senate Report No. 1992, 87th Congress, 2nd Session, U.S.Code Cong. & Admin.News 1962, p. 2784. Rather, it may be generally characterized as a means for compelling an official to perform a duty required by law [6] which is essentially ministerial in nature. An analysis of C.O. discharge *habeas* cases—in which the scope of review is described as "the narrowest known to the law" [7]—leads to the conclusion that the conditions under which that writ should be granted are comparable to a finding that the approval by the military authorities of the discharge application should have been a mere perfunctory or ministerial matter. The standard is stated of course in different language—whether there is any basis in fact (for the denial). It seems manifest that, given an application for C.O. discharge skillfully modelled after appropriate Supreme Court decisions, supported by hundreds of letters from friends and enemies, with recommendations for approval by the military chaplain, medical officer, 0–3 interviewing officer, immediate and intervening commanders, it would be held that there would be no basis in fact for denying the application and that the review board would have no discretion in the matter—would be bound to conclude that the discharge should be granted. The gap between the standard of "no basis in fact"—described as the narrowest known in the law—and the standard of involving no (permissible) exercise of judgment and discretion is narrow at best. Our conclusion is that, given a situation where mandamus will otherwise lie, the court may determine whether the appropriate military officials have in denying a C.O. discharge failed to follow their own regulations. *Cf.* McQueary v. Laird, 449 F.2d 608 (10th Cir. 1971).

■■ We, therefore, have accepted plaintiff's invitation to determine whether, from the information before it, the board was required to recommend approval of plaintiff's application.[8] Still's application was for discharge, not

---

6. Though grounded in a regulation rather than statute, the clear duty to follow such regulations, as enunciated in various *habeas* cases, is certainly tantamount to a legal obligation unless and until the regulations are changed.

7. *E. g.*, Robertson v. United States, 417 F.2d 440, 444 (5th Cir. 1969)

8. Members of the board are not made parties to this action. For purposes of this opinion, we have assumed without decid-

for "I–A–O" reclassification for non-combatant service and training. Only those who meet the criteria of "I–A" conscientious objectors are eligible for discharge. AR 135–25, paragraph 9; DoD Directive 1300.6, paragraph IV–B–3b. Accordingly, an applicant for discharge must not only be conscientiously opposed to participation in war in any form but also conscientiously opposed to combatant and non-combatant training and service in the armed forces. See 50 U.S.C.A.App. § 456(j); DoD Directive 1300.6, paragraph IV–B–3b; AR 135–25, paragraph 3b(1). In the exposition of Still's beliefs as contained in his application there is no indication of a belief that his non-combatant service in the armed forces would make him "an accessory" to those actions of armies to which he is conscientiously opposed, and indeed the beliefs which are expressed in his application are consistent with the assumption that he could perform non-combatant service in the armed forces. *Cf.* Silberberg v. Willis, 420 F.2d 662 (1st Cir. 1970).[9] Admittedly, the military authorities did not base their denial of Still's application on this ground, but in a mandamus proceeding it seems appropriate to ask not merely whether the authorities had a basis in fact for the reasons assigned by them but also whether, from what was before them, they were required to take the action which is sought in the judicial proceeding. Our conclusion is that there was room for an adverse decision by the review board and that, accordingly, mandamus should not be granted.

### III. OTHER JURISDICTIONAL GROUNDS.

Plaintiff also asserts jurisdiction under 28 U.S.C. §§ 1331, 1332, and 5 U.S.C. §§ 702, 703, and asks for a remedy

ing that the DA representative who ultimately makes the formal decision (and who is made a defendant) would be required to reach the same conclusion that might be legally required of the review board.

under 28 U.S.C. § 2201 from whatever source jurisdiction may be found. The court concludes that these statutes are not of benefit to the plaintiff in the circumstances outlined in the complaint, and accordingly adopts that part of the Magistrate's report.

### IV. CONCLUSION—ORDER

For the reasons stated, it is hereby ordered that the relief sought by the plaintiff in the nature of mandamus be, and is hereby denied; and that the other aspects of the complaint be dismissed for lack of jurisdiction.

9. Still's affidavit attacking the 0–3 interview contains a statement that he would be opposed to any participation in the armed forces. As noted, this affidavit was not part of the file before the board. Moreover, it was up to Still to see that the exposition of his beliefs in his application was sufficient.