# STRAIT v. LAIRD, SECRETARY OF DEFENSE,
## ET AL.

No. 71–83.   Argued March 22, 1972—Decided May 22, 1972

DOUGLAS, J., delivered the opinion of the Court, in which STEWART WHITE, MARSHALL, and BLACKMUN, JJ., joined. REHNQUIST, J., filed a dissenting opinion, in Part I of which BURGER, C. J., and BRENNAN and POWELL, JJ., joined, *post*, p. 346.

*John T. Hansen* argued the cause for petitioner. With him on the briefs were *Melvin L. Wulf, Michael N. Pollet,* and *Paul Halvonik.*

*Solicitor General Griswold* argued the cause for respondents. With him on the brief were *Assistant Attorney General Mardian, Wm. Terry Bray,* and *Robert L. Keuch.*

*Stanley F. Farrar* filed a brief for the Central Committee for Conscientious Objectors et al. as *amici curiae* urging reversal.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner is an Army Reserve officer not on active duty. His active-duty obligations were deferred while

he went to law school after graduating from college. During the period of deferment and at the time this action was commenced, his military records were kept at Fort Benjamin Harrison, Indiana. His nominal commanding officer was the Commanding Officer of the Reserve Officer Components Personnel Center at Fort Benjamin Harrison. Petitioner was, however, at all times domiciled in California and was never in Indiana or assigned there. On finishing law school he took the California Bar examination and on March 5, 1970, he was ordered to report for active duty at Fort Gordon, Georgia, beginning April 13, 1970. Before that time, however, he had filed an application for discharge as a conscientious objector. That application was processed at Fort Ord, California, where hearings were held. Fort Ord recommended his discharge and review of that recommendation was had in Indiana. The result was disapproval of the application.

Petitioner thereupon filed a petition for writ of habeas corpus in California. The District Court denied a motion to dismiss, holding that it had jurisdiction (3 S. S. L. R. 3152), but ruled against petitioner on the merits. On appeal the Court of Appeals agreed with the District Court as to jurisdiction but disagreed with it on the merits and granted the writ. 3 S. S. L. R. 3784. Shortly thereafter our decision in *Schlanger* v. *Seamans,* 401 U. S. 487, was announced. Thereupon the Court of Appeals granted a petition for rehearing and dismissed the action, holding that the District Court had no jurisdiction under the habeas corpus statutes. 445 F. 2d 843. The case is here on a petition for certiorari, which we granted. We reverse the judgment below.

In *Schlanger* the serviceman—on active duty in the Air Force—was studying in Arizona on assignment from Ohio. There was no officer in Arizona who was his

custodian or one in his chain of command, or one to whom he was to report. While the Habeas Corpus Act extends to those "in custody under or by color of the authority of the United States," 28 U. S. C. § 2241 (c)(1), we held in *Schlanger* that the presence of the "custodian" within the territorial jurisdiction of the District Court was a *sine qua non*. In *Schlanger* the only "custodian" of the serviceman was in Moody AFB, Georgia. While there were army officers in Arizona, there were none to whom the serviceman was reporting and none who were supervising his work there, though he was on active duty. Moreover, the serviceman in that case was in Arizona only temporarily for an educational project.

In the present case California is Strait's home. He was commissioned in California. Up to the controversy in the present case he was on reserve duty, never on active duty, and while he had gone east for graduate work in law, California had always been his home. Fort Ord in California was where his application for conscientious objector discharge was processed and where hearings were held. It was in California where he had had his only meaningful contact with the Army; and his superiors there recommended his discharge as a conscientious objector.

Thus, the contention in the dissent that we "abandon *Schlanger*" by the approach we take today is incorrect. Sergeant Schlanger was on permissive temporary duty. While his stay in Arizona was thus not charged to his leave time, it was primarily for his own benefit,[1] he paid

---

[1] At the time Sergeant Schlanger received his assignment, Air Force Regulation 35–26 (Mar. 6, 1968) defined "permissive temporary duty" as "duty of a quasi-official nature performed at other than the permanent duty station, without costs to the Government for per diem and travel." So defined, primary difference between "leave" and "permissive temporary duty" appears to be that

his own expenses, and he was as much on his own as any serviceman on leave. We held in *Schlanger* that, while an active-duty serviceman in such a status might be in military "custody," see *Donigian v. Laird,* 308 F. Supp. 449 (Md. 1969), his custodian may not be deemed present wherever the serviceman has persuaded the service to let him go. The jurisdictional defect in *Schlanger,* however, was not merely the physical absence of the Commander of Moody AFB from the District of Arizona, but the total lack of formal contacts between Schlanger and the military in that district.

Strait's situation is far different. His nominal custodian, unlike Schlanger's, has enlisted the aid and directed the activities of armed forces personnel in California in his dealings with Strait. Indeed, in the course of Strait's enlistment, virtually every face-to-face contact between him and the military has taken place in California. In the face of this record, to say that Strait's custodian is amenable to process only in Indiana—or wherever the Army chooses to locate its recordkeeping center, see n. 3, *infra*—would be to exalt fiction over reality.

In a closely parallel case the Court of Appeals for the Second Circuit held that an unattached reserve officer who lived in New York and whose application for discharge as a conscientious objector was processed in New York could properly file for habeas corpus in New York, even though the commanding officer of the reservists was in Fort Benjamin Harrison, Indiana. *Arlen v. Laird,* 451 F. 2d 684. The court held that the only contacts the serviceman had had with his commanding officer were through the officers he dealt with in New York. Those contacts, it concluded, were sufficient to give the

---

the latter status requires the serviceman to convince the military that his proposed activity, while away from his permanent duty station, would be of some direct or indirect benefit to the service.

commanding officer "presence" in New York. It concluded:

> "Quite unlike a commanding officer who is responsible for the day to day control of his subordinates, the commanding officer of the Center is the head of a basically administrative organization that merely keeps the records of unattached reservists. To give the commanding officer of the Center 'custody' of the thousands of reservists throughout the United States and to hold at the same time that the commanding officer is present for *habeas corpus* purposes only within one small geographical area is to ignore reality." *Id.,* at 687.

We agree with that view. Strait's commanding officer is "present" in California through the officers in the hierarchy of the command who processed this serviceman's application for discharge.[2] To require him to go to Indiana where he never has been or assigned to be would entail needless expense and inconvenience. It "would result in a concentration of similar cases in the district in which the Reserve Officer Components Personnel Center is located." *Donigian* v. *Laird,* 308 F. Supp., at 453.[3] The concepts of "custody" and "custodian" are

---

[2] That such "presence" may suffice for personal jurisdiction is well settled, *McGee* v. *Int'l Life Ins. Co.,* 355 U. S. 220; *Int'l Shoe Co.* v. *Washington,* 326 U. S. 310, and the concept is also not a novel one as regards habeas corpus jurisdiction. In *Ex parte Endo,* 323 U. S. 283, 307, we said that habeas corpus may issue "if a respondent who has custody of the prisoner is within reach of the court's process . . . ." Strait's commanding officer is "present" in California through his contacts in that State; he is therefore "within reach" of the federal court in which Strait filed his petition. See *Donigian* v. *Laird,* 308 F. Supp. 449, 453; cf. *United States ex rel. Armstrong* v. *Wheeler,* 321 F. Supp. 471, 475.

[3] This concentration would be exacerbated in the extreme by the fact that the Reserve Components Personnel Center at Fort Benjamin Harrison, Indiana, has now been moved to St. Louis,

sufficiently broad to allow us to say that the commanding officer in Indiana, operating through officers in California in processing petitioner's claim, is in California for the limited purposes of habeas corpus jurisdiction.

We intimate no opinion on the merits of the controversy—whether petitioner is entitled to a discharge or whether by denying that relief the Army has acted in accordance with the prescribed procedures. We hold only that there is jurisdiction under 28 U. S. C. § 2241 (c)(1) for consideration of this habeas corpus petition and for decision on the merits.

*Reversed.*

MR. JUSTICE REHNQUIST, dissenting.

The Court today emasculates *Schlanger* v. *Seamans,* 401 U. S. 487 (1971), by permitting habeas corpus when the custodian against whom the writ must run is not within the forum judicial district. It stretches the concept of custody beyond anything contained in any of our previous decisions, and permits the federal courts through habeas corpus to exercise broader review of military administration than has ever been permitted. I therefore dissent.

I

The facts of this case are indistinguishable in any material respect from *Schlanger* v. *Seamans, supra.* Petitioner was assigned to the Reserve Officer Components Personnel Center at Fort Benjamin Harrison, Indiana. His dealings with the Army consisted of several requests for delay in commencing active duty, all of which were addressed to and granted by his com-

Missouri, and has been there merged into the United States Army Reserve Components Personnel and Administration Center (RCPAC). RCPAC has recordkeeping and nominal administrative responsibility for approximately 2,000,000 servicemen, all unattached, inactive reservists such as petitioner.

manding officer at Fort Benjamin Harrison, and an application for discharge as a conscientious objector, which was also submitted to the Indiana command. Although petitioner was interviewed by a chaplain, psychiatrist, and another Army officer at Fort Ord, California, each of whom made recommendations about petitioner's application, petitioner was not subject to military orders from any command in California nor did any California command rule upon his application. The preliminary processing accomplished by the interviews was forwarded to petitioner's commanding officer at Fort Benjamin Harrison, who convened a review board to pass upon the application. Following the board's recommendation, petitioner's commanding officer denied the requested discharge. Nothing in the record before us indicates that petitioner has ever been subject to the orders of any Army officer or command in California. What little control the Army imposed upon petitioner emanated from his commanding officer in Indiana.

Only last Term, this Court held in *Schlanger,* that a district court has jurisdiction to issue a writ of habeas corpus under 28 U. S. C. § 2241, to a military custodian, only where a commanding officer or other custodian in the chain of command is found within the judicial district. Because Schlanger had been assigned to a command in Georgia, and no official in Arizona controlled his activities, the District Court of Arizona had no habeas jurisdiction. Attempting to reconcile *Schlanger* with this case, the Court today says:

> "In *Schlanger* the only 'custodian' of the serviceman was in Moody AFB, Georgia. While there were army officers in Arizona, there were none to whom the serviceman was reporting and none who were supervising his work there, though he was on active duty. Moreover, the serviceman in

that case was in Arizona only temporarily for an educational project.

"In the present case California is Strait's home. He was commissioned in California. Up to the controversy in the present case he was on reserve duty, never on active duty, and while he had gone east for graduate work in law, California had always been his home. Fort Ord in California was where he processed his application for conscientious objector discharge and where hearings were held. It was in California where he had had his only meaningful contact with the Army; and his superiors there recommended his discharge as a conscientious objector." *Ante,* at 343.

But there were no officers in California to whom this petitioner was reporting, and "none who were supervising his work there." His control by the Army has heretofore consisted only of requests for delayed commencement of active duty, and for discharge. All such requests were addressed to and decided by his commanding officer in Indiana. His "meaningful contact" with the Army was not in California, but Indiana. His interviews with staff officers at Fort Ord neither constituted them "superiors" nor did it bring them within petitioner's chain of command. No officer or command in California had authority to provide the relief requested by petitioner. Under the principle enunciated in *Schlanger,* the Northern District of California lacked jurisdiction to issue habeas corpus for want of a custodian within the district. Emphasizing that petitioner brought this habeas corpus suit in the district where his home is cannot cure that defect, cf. *Rudick* v. *Laird,* 412 F. 2d 16 (CA2 1969). We deal not with the provisions of a venue statute, but with the established requirement that the petitioner's custodian be within the

district. Petitioner's presence in his home State to take the bar examination, after a three-year absence while attending law school, affords him no more support than did Schlanger's presence in Arizona.

The Court substitutes the approach of *Arlen* v. *Laird,* 451 F. 2d 684 (CA2 1971), for its *Schlanger* rule. *Arlen,* incorrectly concluding that *Schlanger* reserved the question presented here,[1] held that the type of contacts between the commanding officer and a reservist that have been found to support state jurisdiction over nonresidents under cases like *McGee* v. *Int'l Life Ins. Co.,* 355 U. S. 220 (1957), and *Int'l Shoe Co.* v. *Washington,* 326 U. S. 310 (1945), would also suffice for habeas jurisdiction. To adopt *Arlen* is to abandon *Schlanger.* But the reasons given by the Second Circuit in *Arlen* do not support a result in that case different from *Schlanger.* *Arlen* noted that Government counsel were adequately available in any judicial district, and the records could be forwarded from petitioner's command to the forum district. The same could have been said of *Schlanger.* Moreover, the Government can assert that Indiana would be the appropriate forum, for the actions of which petitioner complains were taken by the commanding officer and his advisory board at Fort Benjamin Harrison and presumably the proper witnesses for this litigation were there. These factors would be appropriately considered in a determination as to venue or *forum non conveniens* but they are not a substitute for the actual presence of a custodian, which *Schlanger* held was required by statute.

---

[1] "The Supreme Court reserved decision on this precise question, 401 U. S., at 489, 491 n. 5 . . . and cited, apparently with approval, Donigian v. Laird, 308 F. Supp. 449 (D. Md. 1969)," 451 F. 2d, at 686. But the cited portions of *Schlanger* dealt only with the question of custody, and not with the separate jurisdictional requirement that a custodian be present within the judicial district.

## II

While I am satisfied that the Ninth Circuit correctly applied *Schlanger* and ordered dismissal of the habeas corpus petition for want of a custodian within the district, the analysis of the Court in reaching the opposite conclusion highlights what is for me the more substantial issue of whether petitioner was in the custody of anyone.

The Court believes that petitioner's commanding officer was merely a record center, and says that the realistic approach is to rule that such a record center is present in all States where there are reservists over whom it has custody. I believe that where the control exercised over petitioner is so attenuated as to require the contacts between himself and his commanding officer to be weighed for a jurisdictional nexus, the problem is not where the custodian may be found, but whether the petitioner is in custody at all. The most realistic approach is to recognize that custody as a prerequisite for habeas corpus simply does not exist for an unattached reservist who is under virtually no restraints upon where he may live, work, or study, and whose only connection with the Army is a future obligation to enter active duty. This Court has recognized that a person on active duty with the armed forces is sufficiently "in custody" to invoke habeas corpus. *Eagles* v. *Samuels*, 329 U. S. 304 (1946); *Schlanger* v. *Seamans, supra;* *Parisi* v. *Davidson,* 405 U. S. 34 (1972). Aside from ruling that release from active to inactive duty does not moot a habeas proceeding,[2] however, the Court has never considered whether a future obligation to commence Army duty is a sufficiently severe restraint to support habeas jurisdiction.

Habeas corpus is a powerful remedy to be wielded promptly in cases where restrictions on individual liberty

---

[2] *Gillette* v. *United States,* 401 U. S. 437, 440 n. 2 (1971).

are substantial. The requirement of custody is a primary parameter for preserving the great writ for appropriate situations. It is undefined by statute, but depends upon the severity of restraint upon liberty that is involved. *Jones* v. *Cunningham,* 371 U. S. 236 (1963); Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1073 (1970).

Notions of custody have changed over the years. In 1885, this Court held that a military order restricting a serviceman to the confines of the District of Columbia did not place him in custody. *Wales* v. *Whitney,* 114 U. S. 564 (1885). Recent decisions dealing with nonmilitary petitioners have admittedly broadened the concept of custody. *Jones* v. *Cunningham, supra; Carafas* v. *LaVallee,* 391 U. S. 234 (1968). *Jones* held that a parolee was in custody because he was restricted to the community of his parole, needed special permission to undertake some activities such as driving an auto, and was subject to prompt reincarceration with only administrative proceedings if he violated parole conditions. In *Carafas* a convicted felon who was neither in prison nor on parole was held to be "in custody" because the disabilities of his conviction prevented him from engaging in many types of businesses, voting at any state election, or serving as a labor official or juror.

But even if this nonmilitary standard were to be applied to petitioner, it is difficult to place him in that class of persons laboring under substantial restraints for whom habeas corpus is reserved. By his own admission, petitioner "has not been subject to military orders, reserve meetings or summer active duty." From all that appears in the record, petitioner is free to go anywhere he desires or to engage in any activity he chooses, and is not subject to any Army control until he commences active duty. His situation is indistinguishable from a prospective inductee, who is not considered to

be in custody for habeas corpus purposes until after induction. *DeRozario* v. *Commanding Officer,* 390 F. 2d 532 (CA9 1967). Neither precedent nor the *raison d'être* of the writ sanctions the result reached in this case. Petitioner would be in "custody" only when he reported to Fort Gordon, Georgia, pursuant to his orders, and only then would he be entitled to bring habeas corpus.

## III

There is yet another shortcoming in petitioner's claim to habeas corpus.

Unlike those who are covered by the Military Selective Service Act, 50 U. S. C. App. § 451 *et seq.,* there is no statutory right afforded petitioner and other voluntary members of the armed services to be discharged as conscientious objectors. Under Department of Defense Directive 1300.6 the armed forces will approve administrative discharges on a discretionary basis. By assuming that habeas corpus review of the exercise of this discretion is proper, the Court and the courts of appeals applying the same standards of review called for under § 6 (j) of the Military Selective Service Act, 81 Stat. 104, as amended, 85 Stat. 351,[3] have failed to recognize well-established limitations upon habeas corpus in military cases, and the also well-established re-

---

[3] Most of the circuits have permitted habeas corpus review of an application for discharge under DOD 1300.6. *E. g., United States ex rel. Sheldon* v. *O'Malley,* 137 U. S. App. D. C. 141, 420 F. 2d 1344 (1969); *Bates* v. *Commander,* 413 F. 2d 475 (CA1 1969); *Hammond* v. *Lenfest,* 398 F. 2d 705 (CA2 1968); *Brown* v. *McNamara,* 387 F. 2d 150 (CA3 1967); *United States ex rel. Brooks* v. *Clifford,* 409 F. 2d 700 (CA4 1969); *Brown* v. *Resor,* 407 F. 2d 281 (CA5 1969); *Packard* v. *Rollins,* 422 F. 2d 525 (CA8 1970); *Sertic* v. *Laird,* 418 F. 2d 915 (CA9 1969).

This Court has considered petitions for habeas corpus under DOD 1300.6 in *Craycroft* v. *Ferrall,* 397 U. S. 335 (1970), and *Gillette* v. *United States,* 401 U. S. 437 (1971).

striction upon reviewing the administration of the armed services.

A district court has power to grant a writ of habeas corpus only where a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States"[4] or "is in custody under or by color of the authority of the United States."[5] Petitioner has voluntarily assumed a reserve officer's commission and there is no indication from the record that his present obligation violates either the Constitution or laws of the United States. Nor is he restrained under any color of authority of the United States that cannot be traced to legitimate statutory authorization. Our inquiry should go no further.

In *Burns* v. *Wilson,* 346 U. S. 137 (1953), the Court reiterated the rule that the scope of habeas corpus has always been narrower in military cases than when a prisoner is in civil custody. That case permitted review of a court-martial conviction for claimed violations of constitutional due process where the military justice system had failed to fully consider such claims. Except for constitutional violations, however, relief is proper only if the military had no jurisdiction to take the action complained of.

Lack of jurisdiction to review requests for administrative discharge has similarly been well established. In *Orloff* v. *Willoughby,* 345 U. S. 83 (1953), the Court refused to review a military-duty assignment or to order a discharge on the ground that the petitioner there had been unlawfully treated, recognizing that military discretion is not subject to review in the courts. See also *Noyd* v. *McNamara,* 378 F. 2d 538 (CA10 1967) (refusal to order assignment to nonobjectionable duties or accept resignation of conscientious objector); *United States ex*

[4] 28 U. S. C. § 2241 (c) (3).
[5] 28 U. S. C. § 2241 (c) (1).

*rel. Schonbrun* v. *Commanding Officer,* 403 F. 2d 371
(CA2 1968) (no habeas corpus or mandamus jurisdiction
to review denial of hardship discharge request); *Antonuk*
v. *United States,* 445 F. 2d 592 (CA6 1971) (no juris-
diction to review promotions).

It is said that jurisdiction is established to review
military exercise of administrative discretion where the
promulgated procedures are not followed. Authority for
this proposition is stated to be *Service* v. *Dulles,* 354 U. S.
363 (1957), and *Vitarelli* v. *Seaton,* 359 U. S. 535 (1959).
Although the principles of those cases might not carry
over undiminished to the military services,[6] some lower
courts have assumed that they do.[7] Reviewing an ad-
ministrative decision for conformity to regulations, how-
ever, would afford no relief to petitioner in this case.
If his application for discharge was processed as required
by DOD Directive 1300.6 the Army has fulfilled its re-
sponsibility regardless of whether its ultimate conclusion
corresponds to the decision that a court of law would
make. In this case the provisions of DOD Directive
1300.6 were applied to petitioner by Army Regulation
135–25. It requires submission of a form request by
petitioner, subsequent interviews with a chaplain, med-
ical officer, and an "O–3" hearing officer, consideration of
the application by a board of recommendation, and finally
action by petitioner's commanding officer. All these
procedures were followed in petitioner's case. The Army
acted within its jurisdiction in denying the request.

---

[6] "[W]e cannot review the merits of appellant's present claim
that the Air Force in the case at bar did not comply with its own
regulations in regard to appellant. Such a claim must indeed be
strained to contain an overtone of constitutional invalidity giving
rise to immediate judicial review of its application." *Noyd* v. *Mc-
Namara,* 378 F. 2d 538, 540 (CA10 1967).

[7] *E. g., Antonuk* v. *United States,* 445 F. 2d 592 (CA6 1971);
*Smith* v. *Resor,* 406 F. 2d 141 (CA2 1969).

Habeas corpus will issue where a person is held in custody under color of federal authority, or in violation of the Constitution or laws of the United States. 28 U. S. C. §§ 2241 (c)(1) and (c)(3). There is no question that the Army had jurisdiction over petitioner at least to the limited extent discussed above in reference to the issue of custody. There is also no question that the Army is under no statutory command to discharge petitioner before the expiration of his contracted period of military service. Acting in accordance with its own procedures, it has chosen not to do so. For me, this ends the permissible scope of habeas corpus inquiry.

THE CHIEF JUSTICE, MR. JUSTICE BRENNAN, and MR. JUSTICE POWELL join Part I of this dissent and on that ground would affirm the judgment of the Court of Appeals.