**UNITED STATES of America, ex rel. Harry APPLEBAUM, Petitioner,**

v.

**Robert C. SEAMAN, Jr., Secretary of the Air Force & Commanding Officer, U. S. Air Force Reserve, Personnel Center, Respondents.**

No. 72 Civ. 4872.

United States District Court,
S. D. New York.

June 20, 1973.

---

28. Note, Cooperative Housing Corporations and the Federal Securities Laws, 71 Col.L.Rev. 118, 128–129 (1971).

Kunstler, Kunstler & Hyman by Steven J. Hyman, New York City, for petitioner.

Paul J. Curran, U. S. Atty., by V. Pamela Davis, Asst. U. S. Atty., New York City, for respondent.

## OPINION

MOTLEY, District Judge.

Harry Applebaum, a physician in the United States Air Force Reserve, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner brought on the instant petition by order to show cause dated November 16, 1972. The petition is granted for the reasons which follow.

Petitioner, a resident of New York, received his appointment as an Air Force Reservist after his order of induction dated March 17, 1971. He was appointed a first lieutenant on June 8, 1971. After several delays, during which time petitioner continued his education, he was scheduled to report to Sheppard AFB, Texas, on May 7, 1972, with eventual assignment to Udorn Airfield, Thailand. After notification of his impending call to active duty, petitioner, by letter dated February 8, 1972, requested the Air Reserve Personnel Center, Denver, Colorado, to furnish him information on the procedures for applying for conscientious objector status. On April 5, 1972, he applied for conscientious objector status and on May 23 he tendered his resignation "by reason of conscientious objection." According to the application, petitioner's ". . . moral abhorrence of violence which is the antithesis of the military philosophy, ha[d] developed through . . . [his] recent experience in a ghetto community hospital. [Elmhurst Hospital]. (Petitioner's Exhibit A, attached to Hyman affidavit, dated November 15, 1972).

The call to active duty was deferred pending disposition of the conscientious objector application.

Pursuant to the advice furnished him by the Air Reserve Personnel Center, petitioner arranged for interviews with a military chaplain, psychiatrist and an officer at McGuire Air Force Base in New Jersey. 32 C.F.R. §§ 888e.20, 888e.-22. Apparently because McGuire did not have a Jewish chaplain on base, petitioner was sent to Fort Dix, New Jersey, for an interview with a chaplain there.

On June 14, 1972, a hearing was conducted at McGuire by Major George Phillips. On June 26, 1972, despite the Chaplain's recommendation that petitioner's application be approved (Respondents' Exhibit 6, attached to affida-

vit of V. Pamela Davis, Assistant United States Attorney, dated November 30, 1972), on June 26, 1972, Major Phillips recommended disapproval of the application. (Respondents' Exhibit 33). Major Phillips relied on what he believed to be certain inconsistencies in Applebaum's reasoning which purportedly indicated a lack of sincerity.

Petitioner was allowed to examine and comment on the materials to be forwarded from McGuire and his rebuttal, dated July 10, 1972, was sent to the Air Reserve Personnel Center. (Respondents' Exhibit 12). 32 C.F.R. § 888e.26.

On July 31, 1972, Col. Mack E. Schwing, the Staff Judge Advocate, Air Reserve Personnel Center, recommended approval of the application. (Respondents' Exhibit 11). The Air Reserve Personnel Center (similarly recommended approval of the application on August 3, 1972. (Respondents' Exhibit 10).

On September 13, 1972, however, the office of the Surgeon of the Department of the Air Force recommended disapproval. The thrust of the report was that it was inconsistent for Applebaum to object to treating military personnel as a military officer on the ground that he was opposed to violence since as a physician in civilian life he would have to confront those acts of violence which are ". . . unfortunate but . . . inherent in human behavior. . . . Thus, if Lieutenant Applebaum were to abide by his stated objection to violence in all aspects, he would in good conscience be forced to seek another profession." The report further stated, "We can agree that if Lieutenant Applebaum has deep moral feelings about serving in Southeast Asia, then he sould [sic] be utilized in another assignment not in direct support of that conflict. In this regard, if his C. O. application is disapproved, he will be reassigned to a stateside Air Force medical facility where he will be utilized to treat mostly dependent patients." (Respondents' Exhibit 9).

On October 13, 1972, Brig. Gen. Frank O. House, Director of Civil Law, Office of the Judge Advocate General of the Air Force, reported that his office had concluded that Applebaum's application should be denied on the ground that there was ". . . sufficient evidence of record to demonstrate that his application may well result from an expedient effort to avoid active military service," given the timing of the application and what the office believed to be inconsistencies in the application. (Respondents' Exhibit 3). The Secretary of the Air Force adopted this recommendation and declined to classify petitioner as a conscientious objector on October 30, 1972.

Applebaum filed this action on November 15, 1972 and on November 17, respondents were temporarily restrained from requiring petitioner to report to Sheppard Air Force Base pending the decision on the petition for habeas corpus relief.

The basis of the petition is that the denial of Applebaum's application by the Air Force was irrational and unsupported by the record. United States ex rel. Checkman v. Laird, 469 F.2d 773 (2d Cir. 1972).

I. The threshold question is whether this court has jurisdiction under the federal habeas corpus statute, 28 U.S.C. § 2241 et seq.

The statute provides that federal courts may grant the writ "within their respective jurisdictions," 28 U.S.C. § 2241(a), to those "in custody under or by color of the authority of the United States." 28 U.S.C. § 2241(c)(1).

■ The Supreme Court has held that a custodian, or one in the chain of command, must be in the territorial jurisdiction of the court. It is required at least that the petitioner somehow be under the command of officers within the court's jurisdiction. Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L. Ed.2d 251 (1971).

Thus, in *Schlanger*, the Court held that an enlisted man in an officer training program who was assigned to Moody AFB, Georgia but who was permitted to attend Arizona State University must

bring his habeas action in Georgia since his custodian was located in Georgia.

However, with respect to unattached, inactive reservists, such as petitioner, the rule is quite different. In such cases, reservists have been permitted to seek habeas relief in the district in which they resided rather than in the district in which their nominal commanding officer resided. Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L. Ed.2d 141 (1972); Arlen v. Laird, 451 F.2d 684 (2d Cir. 1971). The *Strait* and *Arlen* courts reasoned that because the commanding officer is the head of ". . . a basically administrative organization that merely keeps the records of unattached reservists . . ., [t]o give the commanding officer . . . 'custody' of the thousands of reservists throughout the United States and to hold at the same time that the commanding officer is present for habeas corpus purposes only within one small geographical area is to ignore reality.'" *Strait, supra,* 406 U.S. at 345, 92 S.Ct. at 1695, quoting *Arlen, supra,* 451 F.2d at 687. Moreover, it was noted that the reservist's nominal custodian had ". . . enlisted the aid and directed the activities of armed forces personnel in California [the district in which the action was brought] in his dealings with . . . [petitioner]. Indeed, in the course of . . . [petitioner's] enlistment, virtually every face-to-face contact between him and the military has taken place in California. . . . The concepts of 'custody' and 'custodian' are sufficiently broad to allow us to say that the commanding officer in Indiana, operating through officers in California in processing petitioner's claim, is in California for the limited purposes of habeas corpus jurisdiction." *Strait, su-*pra, 406 U.S. at 344–346, 92 S.Ct. at 1695–1696.

In the instant case, it appears that petitioner's contacts with the Air Force have been in New Jersey, where he was interviewed in connection with his conscientious objection claim. The court concludes, however, that the lack of formal contacts with the military within this judicial district does not defeat jurisdiction.

The interviews in New Jersey were the product of petitioner's own decision to apply for conscientious objector status. It would be difficult to hold that, as the result of the interviews and processing of the application, New Jersey Air Force officers exercise "custody" over petitioner. While it is certainly arguable that petitioner's nominal commanding officer was "'present' in . . . [New Jersey] through the officers in the hierarchy of the command who processed this serviceman's application for discharge," *Strait, supra,* at 345, 92 S.Ct. at 1695, petitioner's nominal commanding officer is no less present in New York since his arm is long and petitioner is obviously subject to his orders within New York.

█ While it is sensible to require an active reservist to sue in the judicial district in which he is stationed, since it is there that custody is most direct and it would be against the commanding officer of the base to which he was assigned that a writ of habeas corpus would issue, there is little reason to require an unattached, inactive reservist to sue where his interviews have taken place. The writ would not issue against the commanding officer of the base where the application was processed but rather against the respondents.[1]

---

1. The court has personal jurisdiction over respondents since they clearly have sufficient contacts in this district through their agents in the hierarchy of command to be "within reach" of this court. *See* Donigan v. Laird, 308 F.Supp. 449, 453 (D.Md.1969); *see also* Rule 4, Fed.R.Civ.P.; N.Y.C.P.L.R. § 302(a)(1) McKinney's Consol.Laws, c. 8;

Perkins v. Benguet Consol. Mining, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). The court need not decide whether 28 U.S.C. § 1391(e), which provides for nationwide service of process in a "civil action in which each defendant is an officer or employee of the United States," is applicable to habeas corpus actions.

A requirement that an inactive reservist sue in the district in which his interviews took place rather than in the district in which he resides would seemingly have to be based on an assumption that the district where the processing of the application commenced would be a more convenient forum for the parties. Indeed, the choice of a proper forum in habeas corpus cases should be based on a consideration of several interests: "First, the forum should be close to the records of the case and to the witnesses who may have to appear. Second, the choice should promote a fair distribution of habeas cases among all the district courts rather than concentrating the burden on a few. Third, the forum should be close to the prisoner in order to minimize the difficulty of transporting him to the courtroom. And finally, it should be close enough to the prisoner to facilitate communication between him and his attorney." Developments in the Law—Federal Habeas Corpus, 83 Harv. L.Rev. 1038, 1160–61 (1970).

■ Since petitioner is not incarcerated, only the first two factors are relevant. With respect to the first, since the hearing of the petition is to be based entirely on the written record which is already before the court, the forum need not be in New Jersey in order to accommodate witnesses or to facilitate access to the records. With respect to the second factor, the distribution of cases among the district courts will not be significantly affected since there are unlikely to be many cases in which an unattached reservist has his contacts with the military in a district other than the one in which he resides. *See also* Feingold v. Laird, 72 Civ. 1607 (S.D.N.Y., decided July 14, 1972) (Palmieri, J.).

II. Applebaum's application stated a *prima facie* case for conscientious objector status. According to the application, petitioner is opposed to war in any form and his opposition derives from moral and ethical beliefs which were drawn in part from the tenets of a recognized creed (Judaism). On its face, the application indicates that petitioner's moral and ethical beliefs occupy "the same place in his life as the belief in a traditional deity holds in the lives of [others]." United States v. Seeger, 380 U.S. 163, 187, 85 S.Ct. 850, 865, 13 L.Ed.2d 733 (1965); United States ex rel. Checkman v. Laird, 469 F.2d 773, 777 (2d Cir. 1972).

■ Since petitioner's application stated a *prima facie* case, the decision of the Secretary of the Air Force can be upheld only if ". . . the record contains the objective basis requisite for rejection of the application." *Checkman, supra,* at 778.

Thus, the court must determine whether the stated grounds for the denial[2] had a basis in the record.

The conclusion that petitioner was insincere because ". . . his attempt to analogize the violence of the ghetto with his understanding of conditions in the Air Force . . . is patently falacious [sic] to all knowledgeable and unbiased observers," (Legal Review, Respondents' Exhibit 3), comes close to the denial of ". . . existence of bona fide beliefs because those beliefs are incompatible with one's own." 32 C.F.R. § 888e.10(a)(iii). The argument that petitioner, if he is opposed to violence, should ". . . both as a matter of conscience and logic, . . . attempt to disassociate himself from assisting ghetto residents . . . as well as members of the military community," (Respondents' Exhibit 3), can hardly support a finding of insincerity. Petitioner based his conscientious objection claim on an opposition to war, triggered in large part by the consequences of violence he had an opportunity to observe at Elmhurst Hospital. He stated that, as a physician serving residents of the ghetto, he had an opportunity to help alleviate some of the conditions which contribute to violent conduct but that, as a

2. See p. 1179 *supra.*

physician in the Air Force, it would be his duty to obey instructions of ". . . an organization whose primary role—whether people believe it good or bad—is violence. . . ." (Transcript, Hearing, McGuire Air Force Base, June 14, 1972, p. 5. Respondents' Exhibit 34).

■ Nor can the claim of expediency be supported by the fact that the conscientious objector application was filed shortly after he was informed that he was about to be called to active duty. The Air Force regulations provide that Air Force personnel can obtain conscientious objector status even if their views crystallized after receipt of an induction order. 32 C.F.R. § 888e.10(a)(2)(i). Thus, mere lateness of filing cannot be a sufficient ground for finding a lack of sincerity. While lateness of filing is certainly probative of a lack of sincerity, e. g., United States v. Gearey, 379 F.2d 915 (2d Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967), it is not conclusive. See, e. g., Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971); United States v. Nagler, 484 F.2d 38 (2d Cir. 1973). Petitioner explained the late crystallization of his views by his experience at Elmhurst Hospital. The Air Force rejected this explanation, as noted above, on the ground that petitioner was insincere. Since the court has rejected that conclusion, the court finds that there was no adequate basis for relying on the lateness of the application in concluding that petitioner was acting expediently.

■ Moreover, the court, upon a careful examination of the record, concludes that there is no basis upon which the Secretary of the Air Force could deny petitioner's application for conscientious objector status. A writ will accordingly issue directing respondents to release petitioner from Air Force duty.