**UNITED STATES of America ex rel. Alan D. TICE, Petitioner,**

v.

**Robert C. SEAMANS, Jr., Secretary of the Air Force, et al., Respondents.**

**No. 73 Civ. 1709.**

United States District Court,
S. D. New York.

June 27, 1973.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., for respondents; by Joseph P. Marro, New York City, of counsel.

Kunstler, Kunstler & Hyman, New York City, for petitioner; by Steven J. Hyman, New York City, of counsel.

GURFEIN, District Judge.

The petitioner is a physician, currently a resident in internal medicine at Bellevue Hospital and a First Lieutenant in the United States Air Force Medical Reserve. He petitions for a writ of habeas corpus, seeking discharge from the Armed Forces as a conscientious objector. Jurisdiction is alleged under 28 U. S.C. §§ 2241, 2242, 2243 (habeas corpus); 28 U.S.C. §§ 1331, 1332 (federal question); and 28 U.S.C. § 1361 (mandamus). Venue is said to be proper under 28 U.S.C. § 1391.[1]

The petitioner had earlier brought a similar petition which I remanded to the Secretary of the Air Force for further consideration of his decision to deny conscientious objector status to the petitioner in the light of this Circuit's opinion in United States ex rel. Checkman v. Laird, 469 F.2d 773, 778–779 (2 Cir. 1972).

Instead of reviewing the matter *de novo*, the Secretary wrote a letter to the Court, under the signature of Jeanne M. Holm, Brigadier General, USAF, Director, Secretary of the Air Force Personnel Council, purporting to inform the Court of the reasons for adhering to the earlier conclusion.

Accordingly, "[w]hen there is a requirement of law that reasons be stated by executive officials or administrative agencies responsible for decisions, there is an implicit corollary that the decision must stand or fall on the basis of the reasons stated." *Checkman, supra,* at 780.

We must, therefore, analyze the reasons given by the Air Force for the denial of discharge because of conscientious objection. That commands inquiry into the history of the petitioner.

---

1. There is jurisdiction and venue in the District where an unattached, inactive reservist resides. Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972); Arlen v. Laird, 451 F.2d 684 (2 Cir. 1971); Feingold v. Laird, 5 SSLR, 3632 (S.D.N.Y. July 14, 1972, Palmieri, J.); United States ex rel. Applebaum v. Seaman, 72 Civ. 4872 (S.D. N.Y. June 20, 1973, Motley, J.).

The facts, as they appear from the record, are as follows: On October 10, 1970, the petitioner applied for a commission under the Berry plan. He received an appointment as a First Lieutenant in the United States Air Force on January 25, 1971. He was then advised that he would be ordered to active duty for two years in either the summer or fall of 1972. At the time of his enlistment the petitioner did not claim a conscientious objector status.

In July 1971, after having spent three months in Thailand as a medical student studying tropical diseases, the petitioner wrote to the Air Force requesting assignment to Thailand to fulfill his active duty commitment. He repeated this preference in October 1971.

Subsequently, the petitioner "became aware, through conversation with a physician who had been to Thailand, what my role as a physician would be in the Air Force. I found myself reassessing my beliefs and questioning whether I could reconcile these beliefs with that I now understand to be service in the Air Force." (Tice Affd. 6/1/73, ¶5).

On April 5, 1972, Dr. Tice wrote a letter to the Department of the Air Force, Headquarters, Air Reserve Personnel Center: "This is to advise you that I hereby request discharge from the United States Air Force on grounds of conscientious objection. I, therefore, formally tender my resignation as a 1st Lieutenant in the U.S. Air Force Reserve Medical Corps."

By return mail, on April 11, 1972, the Air Force outlined the procedures which the petitioner was to follow in pursuing his discharge as a conscientious objector. He was told to furnish proof of his selective service classification and statements from a legal officer, a military chaplain and a military psychiatrist based on personal interviews. He was informed also that a hearing would be conducted by an officer in the grade of Major or higher. See 32 C.F.R. §§ 888e.12–888e.28.

The psychiatrist "cleared" the petitioner for conscientious objector discharge. The Protestant Chaplain recommended that the request for discharge "be approved." And Major Brown who conducted the hearing submitted findings which concluded, "I recommend that Lt. Tice be granted a discharge as a Conscientious Objector in category 1–O." The Air Force also received six letters on behalf of Tice's application. They were dated from April 19 to May 11, 1972.

The file was forwarded to the Air Reserve Personnel Center at Denver. On September 11, 1972 the Staff Judge Advocate also recommended approval of the petitioner's application, which was transmitted with the file to Randolph Air Force Base, Texas.

On September 27, 1972 two things happened. The Command Chaplain's Office also recommended approval, noting that "Lt. Alan D. Tice meets the basic requirements of conscientious objector status. His beliefs against war are deeply and sincerely held, however naively they may have been formed." On the same day, however, the Medical Personnel Procurement Division, Office of the Surgeon General recommended disapproval, stating, "Based on Lieutenant Tice's action during the time he was a participant in the Berry program, one must question the degree of sincerity of his conviction. This coupled with his unfulfilled agreement to serve on active duty for two years, is the basis for the above recommendation [of disapproval]."

Thereafter, on October 5, 1972 the Directorate of the Personnel Program Actions also recommended approval of Tice's application for discharge.

Nevertheless, the Judge Advocate General's Office, on November 15, 1972, recommended disapproval on the ground that "his actions have not been consistent with his professed beliefs." The reasons for the conclusion were (1) that when he enlisted in the Berry plan he had already taken the Hippocratic Oath which he now contends forbids him from taking part in war in any form; and (2) it was only when the call to active

duty was imminent that the Doctor developed new insights into his beliefs.

This recommendation was accepted by the Secretary of the Air Force, and on November 29, 1972 he declined to accept the petitioner's resignation on the ground that he "has not met the burden of establishing that his position is sincere and deeply held so as to qualify as a Conscientious Objector."

Following the adverse decision, the petitioner brought the first petition for habeas corpus and I remanded the matter as stated above. The remand brought not a review but a justification by the Air Force Personnel Board which is the basis for present consideration of the matter.

The memorandum addressed to the Court, under date of March 19, 1973 reiterates the determination that a review of the record as a whole showed that Lieutenant Tice was not sincere in his objection and, therefore, did not qualify as a conscientious objector under AFR 35-24. It noted three areas "of major concern" to the Board: (1) manifest inconsistency in his activities from his entry in the Berry plan through his alleged crystallization of beliefs; (2) his call-up, expected by Lieutenant Tice in July, 1972, was preceded by one month by his application for discharge; (3) the Board noted that his responses at the hearing indicated that his objection to military service was "limited to disagreement with 'military priorities' on patient care, and not with the actual duties to be performed."

The memorandum points out that he must have known of the conflicts his beliefs posed with service in the Air Force when he enlisted, and that his seeking active duty in Thailand while the Vietnam War was going on "seriously call in question his purported longstanding ethical beliefs upon which he now bases his conscientious objection."

The memorandum, while recognizing that the timing of an application "in and of itself is not a sufficient basis for denial of an application for conscientious objection" states that the Board cannot ignore the circumstances surrounding the submission of the application. It notes that the petitioner indicates that his beliefs awakened in December 1971, that he had been informed three months earlier of his impending call to active duty between July and October 1972, and that only two months earlier he had asked for duty in Thailand and stated that he would be available in July 1972.

It also states that "[h]is objection is not to military service but to the professional restrictions imposed by his status as an Air Force doctor." For this conclusion it relies on the circumstance that "it was a former Air Force doctor's explanation of what an Air Force doctor's duties were that is cited as a turning point by Lieutenant Tice." To the extent that his "spontaneous statements" showing that he was concerned with the fact that the Air Force would not allow him "unfettered discretion in his practice" are "contradicting," they add to the substantial evidence of insincerity.

The lower echelon and base recommendations to the contrary are dismissed in the memorandum on the ground that they were "tendered without regard to the points raised above." The conclusion of the lower echelons that the timing of the application was "in and of itself" insufficient for a recommendation for disapproval is deemed irrelevant. The memorandum concludes that Lieutenant Tice "has not sustained his burden." Thereafter, on April 23, 1973, the petitioner commenced the present habeas corpus petition.

■ No evidentiary hearing is required. Review is limited to the record made in the Air Force. Silberberg v. Willis, 420 F.2d 662, 665 (1 Cir. 1970). The classification (here the denial of discharge) can be overturned only if it has no "basis in fact." Witmer v. Unit-

ed States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955).[2]

I find that the reasons given are inadequate and do not constitute a "basis in fact." I agree with the report of the Staff Judge Advocate and his Commander, dated September 11, 1972:

"1. The application of 1st Lieutenant Tice for discharge from the United States Air Force as a Conscientious Objector has been reviewed by this office and found to be legally sufficient.

2. While the applicant's beliefs do not appear to conform to those of a traditional religion, the record does support his assertion that he has a deeply held moral belief that to participate in war at any level is wrong. The strength of the applicant's belief as well as his sincerity is supported by the documentation in the record, the Chaplain's report, and the investigating officer's report.

3. Although the date the applicant's beliefs crystalized may tend to impugn his sincerity, the record is lacking any other evidence of probative value which would discredit his assertions that he is a Conscientious Objector as would be required to recommend the application be denied.

4. In view of the foregoing, it is recommended that the application of Lieutenant Tice for discharge as a Conscientious Objector be approved."

After that recommendation, no further evidence was submitted to higher authority. If the Staff Judge Advocate was right that "the record is lacking any other evidence of probative value [other than lateness of crystallization of belief] which would discredit his assertions that he is a Conscientious Objector" then the contrary decision of higher authority is without support. I think that is so.

Dr. Tice's application is a moving document, even if one disagrees with its conclusion as I do. It states a prima facie case for conscientious objector status. It does not read like a contrived effort to fit into the language of statute, regulation or case law. It appears to be a genuine expression of a tortured conscience, unwilling to take the easy way either before or after the realization that he was in fact a true conscientious objector. As the Command Chaplain affirmed, "Lieutenant Alan D. Tice meets the basic requirements of conscientious objector status. His beliefs against war are deeply and sincerely held, however naively they may have been formed." No doubt is expressed that the petitioner is opposed to war in any form or that his moral and ethical beliefs are not drawn in part from his upbringing as a Methodist. See United States v. Seeger, 380 U.S. 163, 187, 85 S.Ct. 850, 13 .L. Ed.2d 733 (1965). This confirms the finding of the Protestant Chaplain after a searching interview. The Presbyterian Minister who performed his marriage ceremony also wrote: "Because of the struggle I watched him make and because of my sense of his basic patriotism I am convinced of the integrity and sincerity of his decision." The Staff Judge Advocate, who not only has acquired a certain expertise in knowing what qualifies as a prima facie case for conscientious objection, but who, as an officer of the Air Force must have tak-

---

2. Here the test for conscientious objection established by the Air Force reads:

"(a) *Conscientious objection.* A firm, fixed, and sincere objection to participation in war in any form or the bearing of arms by reason of religious training and belief.

(1) *Class 1-0 conscientious objector.* A member who, by reason of conscientious objection, sincerely objects to participation of any kind in war in any form." (32 C.F.R. § 888.e2(a).

§ 888e.6 reads in part:

"Congress has recognized that deep and sincerely held convictions against the use of force may place any citizen in a dilemma between conscience and patriotic obligation, and has therefore provided a means whereby these citizens may be excused from their military obligation by receiving status as a conscientious objector."

en a properly skeptical view, agreed that the petitioner qualified. The demeanor findings are strong and unanimous. "[T]he interviewing chaplain is in the best position to determine whether there is a religious core to an applicant's belief." United States ex rel. Greenwood v. Resor, 439 F.2d 1249, 1251 (4 Cir. 1971).

There is a prima facie case for the applicant which makes erroneous the Secretary's conclusion that the petitioner has not met his "burden of proof." The ·Court must determine whether the stated grounds for the denial have a basis in the record.

The unanimous recommendations of those who interviewed Dr. Tice were rejected because they had failed to consider certain points.

■ 1. The petitioner concedes that he did not know he was a conscientious objector when he enlisted in the Berry plan but that his views crystallized later when he came to think more deeply about his feelings.

That is not an inconsistency that may be used as a point of law. As Judge McEntee observed in Bates v. Commander, First Coast Guard District, 413 F.2d 475, 478 (1 Cir. 1969); "By the Commandant's reasoning, therefore, petitioner's claim cannot 'be considered if it arose prior to his enlistment and is evidence of insincerity if it arose afterwards. By the force of this logic, no member of the armed services could ever qualify as a conscientious objector."

2. The imminence of his call-up is somewhat misinterpreted by the Board. It is emphasized that his call-up, scheduled for July 1972, was preceded by only one month by his application for discharge. Actually, he wrote his letter of resignation on April 5, 1972. The error is not of great importance in itself, but it tends to support my opinion that the Board gave too much weight to the lateness of the application. It is true that the lateness of crystallization of belief must give one pause. But one need not believe implicitly in sudden conversion as a valid religious experience to recognize that a time sometimes does come when a sudden flash of insight can illumine a man's conscience.

3. Finally, the Board dilutes the prima facie character of the petitioner's beliefs by pointing to another alleged inconsistency, namely, that his motivation for seeking discharge is his unwillingness to accept the way the Air Force Medical Corps practices medicine.

What the Board has done is to cull passages from the hearing in which the petitioner refuses to accept the alleged doctrine that an Air Force doctor is required to give priority to the return of wounded airmen to their military duties over his duty to other sick patients. The colloquy is not, in itself, inconsistent with conscientious objection to war. Singling out the petitioner's views on the ethics of medical practice as a paramount motivation, to the exclusion of his conscientious objection to all war, seems to me unjustified. He may have medical views as a physician. He may have moral views as a man. In this case, a careful review convinces me that one does not dilute the other.

■ All of us, judges, military personnel and clergy who have the awesome responsibility of deciding what another man truly believes, must recognize that our judgment, at best, is uncertain. A cardiogram of the conscience will never be invented. The courts have wisely required a showing of some objective evidence to overcome a convincing demonstration of conscientious objection on moral grounds which is recognized in law. I believe the petitioner has made the demonstration, and that there is no basis in fact to overcome the burden that has been met.

A writ of habeas corpus will issue, unless within thirty days the Air Force grants an honorable discharge to Lieutenant Alan D. Tice, under the usual conditions appertaining by law to conscientious objectors. This may be deemed a final order.