PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.                                              No. 07-4220

JASON CONRAD POOLE,
            *Defendant-Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(8:96-cr-00238-AW)

Argued: March 21, 2008

Decided: June 20, 2008

Before MOTZ, TRAXLER, and DUNCAN, Circuit Judges.

---

Reversed and remanded with instructions by published opinion. Judge Duncan wrote the opinion, in which Judge Motz and Judge Traxler joined.

---

## COUNSEL

**ARGUED:** Michele Walls Sartori, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellant. Robert Whelen Biddle, NATHANS & BIDDLE, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland; Barbara S. Skalla, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellant.

**OPINION**

DUNCAN, Circuit Judge:

This appeal presents the issue of whether a temporary custody arrangement can form the basis of a district court's jurisdiction over a habeas petition filed under 28 U.S.C. § 2241(c)(3). For the reasons that follow, we conclude that it does not, and that the measures taken by the district court to secure jurisdiction here were improper. We therefore reverse and remand with instructions to reinstate the original sentence.

A brief overview of this procedurally convoluted case is warranted. After a jury trial, Jason Conrad Poole ("Poole") was found guilty in the United States District Court for the District of Maryland ("Maryland federal district court") of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). Designated a career offender under the United States Sentencing Guidelines ("Guidelines"), U.S.S.G. § 4B1.1 (1995), Poole was sentenced to 262 months' imprisonment and sent to federal prison in Cumberland, Kentucky to serve out his sentence.

Unable to obtain relief after a direct appeal, three habeas corpus petitions (two under 28 U.S.C. § 2255 and one under 28 U.S.C. § 2241), and a number of pro se motions seeking collateral review of his sentence, Poole retained counsel. His counsel secured Poole's appearance before the original federal sentencing judge to testify regarding an outstanding post-conviction motion. Once there, however, Poole abandoned that motion and instead asked to remain in Maryland long enough to file another habeas corpus petition under § 2241(c)(3). In contrast to a § 2255 habeas petition, which is filed with the original sentencing court, a § 2241 habeas petition can only be filed in the district in which a prisoner is confined. The district court acquiesced in Poole's proposal, keeping him in Maryland for several months and short-circuiting Poole's return to his Kentucky cell, in an express attempt to create the requisite confinement for purposes of obtaining jurisdiction over the forthcoming request. Poole eventually filed the § 2241(c)(3) petition, seeking reduction in his sentence on the ground that the career-offender enhancement was improperly applied to him because a state court judgment had

amended one of his prior convictions. The district court granted the petition and resentenced Poole to 135 months' imprisonment. Having already served the majority of that sentence, Poole was released over the government's objections.

The government now appeals, arguing, inter alia, that the district court did not have jurisdiction to consider Poole's § 2241(c)(3) motion because Poole was not "in custody" in Maryland. We agree.

I.

A.

We begin with a detailed explication of the complicated factual and procedural history underlying this appeal. Poole was convicted on February 6, 1997 in the Maryland federal district court of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). He faced designation as a career offender based on two prior convictions in Maryland state court: a 1989 robbery conviction and a 1991 possession-with-intent-to-distribute-cocaine conviction.[1] Such an enhancement would increase his Guidelines sentencing range, from a range of 151 months to 188 months, to a range of 360 months to life imprisonment.[2]

Prior to sentencing, in an effort to avoid the career-offender enhancement, Poole sought modification of the 1991 conviction by filing a motion in the Circuit Court for Prince George's County,

---

[1]A defendant with "at least two prior felony convictions of either a crime of violence or a controlled substance offense" is considered a career offender when he commits a third such offense. U.S.S.G. § 4B1.1 (1995). Because Poole's robbery conviction constituted a "crime of violence" and his possession-with-intent-to-distribute conviction constituted a "controlled substance offense," the Guidelines called for him to be sentenced as a career offender.

[2]Before application of the career-offender enhancement, Poole's federal possession conviction yielded an offense level of 32 coupled with a criminal history category of III. The career-offender enhancement elevated his offense level to 37 and his criminal history category to VI. *See* U.S.S.G. § 4B1.1(A) (1995).

Maryland ("Maryland state court"). In the motion, Poole requested a hearing to reduce the 1991 felony possession-with-intent-to-distribute conviction to a misdemeanor conviction for simple possession, explaining that he "was never advised at the time of his entry of his plea [to the 1991 drug crime] that its effect might be to characterize him as a career offender for Federal sentencing guidelines purposes and expose him to such an extreme penalty for a case involving a small amount of drugs." J.A. 21. Poole attached to the request a proposed order granting *both* the motion for a hearing *and* the underlying relief sought—that "the Court's judgment of conviction entered on November 1, 1991, being and is hereby revised such that the conviction for possession with intent to distribute cocaine is stricken in favor of a judgment of conviction for possession of cocaine." J.A. 23.

On April 21, 1997, Prince George's County Judge Darlene Perry signed and dated the proposed order *granting* the hearing *and* the underlying sentence modification (the "April 21 order").[3] On the same day that the order was filed, however, the underlying matter was also set for a future hearing before Judge Perry. The hearing was held on June 6, 1997, after which Judge Perry entered an order *denying* Poole's substantive motion and leaving his felony drug conviction intact (the "June 6 order"), in direct contradiction to her April 21 order. Judge Perry made no reference to the April 21 order nor to her ostensible modification of the sentence.

Poole returned to federal court shortly thereafter for a sentencing hearing regarding his 1997 federal drug conviction. Judge Perry's April 21 order was never mentioned during this hearing, and Poole did not otherwise challenge the application of the career-offender enhancement. Indeed, the presentence report ("PSR") calculated Poole's Guidelines range assuming the applicability of the career-offender enhancement, recommending a sentence of 360 months to life imprisonment. The district court departed downwards, finding that the Guidelines overstated Poole's criminal history, and sentenced him to 262 months' imprisonment. Poole was sent, at his request, to the federal prison in Cumberland, Kentucky to serve out his sentence.

---

[3]As described below, Poole did not become aware until 2002 that this order was signed, granting him the relief he sought.

B.

In the years that followed, Poole pursued a number of unsuccessful appeals and collateral attacks to his conviction and sentence, including a failed direct appeal and a failed § 2255 petition arguing ineffective assistance of counsel.

Having exhausted the usual avenues for federal relief, Poole filed a pro se motion in 2002 with the Maryland state court seeking reconsideration of Judge Perry's June 6, 1997 order denying him a modification of his sentence for the 1991 drug crime. A law clerk from the Maryland state court responded to Poole, informing him of Judge Perry's April 21 order that appeared to have reclassified his 1991 drug conviction from a felony to a misdemeanor. Poole's subsequent efforts to leverage the April 21 order to reduce his federal sentence form the crux of this appeal.

Poole began by filing pro se another § 2255 petition, his second, challenging the career-offender enhancement in the Maryland federal district court for the first time. Poole argued that, in light of Judge Perry's April 21 order, he had only one eligible prior felony at the time of his 1997 sentencing and therefore should not have been subjected to the career-offender enhancement. The Maryland federal district court denied the motion as successive, instructing Poole to first obtain authorization from this court.[4] This court subsequently denied Poole's request for leave to file a successive habeas corpus motion.

Poole also sought relief in the United States District Court for the Eastern District of Kentucky (the "Kentucky federal district court"), the jurisdiction in which he was confined, by filing a third petition for habeas corpus, this time under § 2241 (his first § 2241 petition).[5] We

---

[4]A second or successive motion under § 2255 must be denied unless certified "by a panel of the appropriate court of appeals to contain—(1) newly discovered evidence . . . ; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2255(h).

[5]As explained in more detail below, § 2255 petitions are generally filed with the original sentencing court, while § 2241 petitions are generally filed in the district of confinement.

discuss Poole's first § 2241 petition in some detail because the matter on appeal today, his second § 2241 petition, closely tracks the arguments Poole made before the Kentucky federal district court.

In the petition, Poole argued there that he was unlawfully sentenced as a career offender because his 1991 drug conviction could no longer support the career-offender enhancement. Though recognizing that habeas petitions of this sort must generally proceed under § 2255, Poole contended that relief under § 2241 was available to him via the so-called "savings clause" of § 2255(e).[6]

The Kentucky federal district court denied the motion, holding that Poole's petition did not fall within the ambit of the savings clause of § 2255 because Poole had failed to demonstrate that § 2255 was "inadequate or ineffective to test the legality of his detention," § 2255(e). Relying on Sixth Circuit precedent, the court explained that the savings clause only preserves claims in which a petitioner claims actual innocence of his conviction, not just "innocence" of a sentencing factor. *See Poole v. Barron*, No. 04-CV-095-KKC, slip op. at 6 (E.D. Ky. May 26, 2004) (citing *Charles v. Chandler*, 180 F.3d 753 (6th Cir. 1999)).[7] The court found this result harmonious with the principle that sentencing errors should generally be addressed by the sentencing court under § 2255, and that only "in very limited circumstances" can a distant federal court entertain a challenge to another district court's actions. *Id.* at 4. Poole did not appeal.

Concurrent with his first § 2241 motion in Kentucky, Poole had also filed a pro se motion in the Maryland federal district court seeking to amend the 1997 judgment against him.[8] Shortly after the Ken-

---

[6]The savings clause allows a § 2241 habeas petition to proceed if "the remedy by [§ 2255] motion is inadequate or ineffective to test the legality of his detention." § 2255(e).

[7]Fourth Circuit precedent has likewise not extended the reach of the savings clause to those petitioners challenging only their sentence. *See In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000) (outlining the circumstances in which "§ 2255 is inadequate and ineffective to test the legality of a *conviction*") (emphasis added).

[8]Specifically, the motion sought a writ of coram nobis, one of several common law writs historically available to those seeking post-judgment

tucky district court denied Poole's first § 2241 petition, the Maryland federal district court likewise denied Poole's pending motion to amend its 1997 judgment. In the wake of his failed pro se attempts, Poole retained counsel. Poole's counsel moved the Maryland federal district court to reconsider its denial of his motion to amend the judgment. The court agreed to do so, and scheduled a hearing for May 1, 2006.

Poole's counsel placed an ex parte telephone call to the Maryland federal district judge, asking that Poole be permitted to attend the hearing. The court acquiesced, and on March 30, 2006, issued a writ of habeas corpus ad testificandum,[9] ordering the warden of the Kentucky prison in which Poole was incarcerated to deliver Poole to the Maryland federal district court for the hearing, and then "to return said individual at conclusion of proceedings to his original place of incarceration." J.A. 85.

---

relief. *See Black's Law Dictionary* 362 (8th ed. 2004) (defining coram nobis as "[a] writ of error directed to a court for review of its own judgment and predicated on alleged errors of fact"). The writ of coram nobis and several historical analogues have since been collected and codified in Federal Rule of Civil Procedure 60(b). *See* Fed. R. Civ. P. 60(b) cmt. to 1946 amendments. Rule 60(b) now acts as a catch-all, providing for relief from a final judgment in a number of circumstances, including when "applying it prospectively is no longer equitable," Fed. R. Civ. P. 60(b)(5) (2003), or for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6) (2003); *see also* 28 U.S.C. § 1651(a) (permitting courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law").

[9]A writ of habeas corpus ad testificandum may be issued when it is "necessary to bring [the prisoner] into court to testify." § 2241(c)(5). Though the statutory seat for the writ lies in § 2241, a petition for a writ of habeas corpus ad testificandum is decidedly distinct from a petition seeking habeas relief from incarceration under § 2241(c)(3). The former is simply a request to have the body of the prisoner transported temporarily for the purpose of giving testimony, and then returned to prison. The latter represents the real relief sought by Poole, first in the Kentucky federal district court, then in the Maryland federal district court, and now here: a writ of habeas corpus issued under § 2241(c)(3) that can, and in this case, did, free him from his federal sentence.

As he explained at oral argument, Poole's counsel realized in the week before the hearing that the motion to reconsider would likely fail. *See also* J.A. 96 (statement of Poole's counsel at the ad testificandum hearing that the motion had "significant disadvantages procedurally and legally" and that, "[b]etween published and unpublished decisions, the handwriting is on the wall"). He nevertheless appeared at the hearing and, instead of withdrawing the motion, asked that it be held in abeyance. With no prior notice to the government of this change in strategy, Poole's counsel also made the extraordinary request that Poole be held in Maryland indefinitely so that he could file a second § 2241 petition, instead of being returned to Kentucky. Counsel candidly acknowledged that he sought Poole's detention in Maryland solely to enable the Maryland federal district court to assert jurisdiction over the forthcoming petition. The government objected to this sudden change in course, explaining that it had no time to consider the appropriateness of the proposed indefinite sequester in Maryland.

Nevertheless, without allowing the government further time to develop a response, the Maryland federal district court agreed to keep Poole in Maryland until Poole's second § 2241 petition could be filed and resolved. The court observed that "this [case] has some interesting issues and I think that it's something that we can give the defendant an opportunity to address and try to find the best vehicle as possible to get his petition in front of the courts." J.A. 108. The U.S. Marshal then transferred Poole to the State of Maryland's Correctional Adjustment Center, which holds federal prisoners pursuant to an agreement with the United States Marshal Service. Poole quickly filed a § 2241 petition in the Maryland federal district court, naming the warden of the Maryland state prison as the respondent, and the district court ordered a hearing on the petition.

Just before the scheduled hearing, the Maryland federal district judge personally called a judge of the Maryland state court, Judge William D. Missouri (Judge Perry having, by then, retired from the bench), asking for clarification as to the legal effect of Judge Perry's April 21, 1997 order. The call was followed up by a letter from one of the federal district court's law clerks, asking Maryland state Judge Missouri "to provide us with an official position from the [Maryland] Circuit Court as to the legal effect of the April 21, 1997 order." J.A.

115. It is not clear on the record whether Judge Missouri responded to these entreaties before Poole's § 2241 hearing. In any event, at the hearing, the court announced that it would refer the question as to the operative effect of Judge Perry's April 21 order to the Maryland state court. Neither Poole nor the government objected. The federal judge then wrote a letter to Judge Missouri, asking him to "deci[de] . . . the effect of Judge Darlene Perry's April 21, 1997 Order." J.A. 116.

Judge Missouri scheduled a hearing on the matter.[10] At the hearing, Poole argued that, by the time of Judge Perry's June 6 order denying him relief, she had likely forgotten that she had previously granted Poole the requested relief. Judge Missouri rejected that explanation, instead finding that Judge Perry had fallen prey to "an old Defense attorney's trick. You submit an order—you request a hearing, . . . and . . . you include the granting of the relief that you're seeking a hearing on. So if the Judge doesn't read it thoroughly enough, he or she signs an order and that order grants the relief . . . that you sought." J.A. 149. Nevertheless, Judge Missouri declared that "public trust and confidence in the Courts dictate that . . . the Court must uphold the signature of one of [its] members that was sitting, whether that member meant to sign what the member signed or not." J.A. 150. Judge Missouri not only granted Poole's motion to alter the state court judgment, but vacated the entire 1991 conviction and set the drug charge for a new trial. Maryland state prosecutors ultimately decided not to retry the case.

## C.

In light of Judge Missouri's order, the Maryland federal district court granted Poole's § 2241 motion. In doing so, the court first found jurisdiction over the petition, reasoning that since the Kentucky district court denied Poole relief, "if this Court denies Poole's Section 2241 petition on jurisdictional grounds, it would foreclose the possibility of any court considering the petition on its merits." *Poole v.*

---

[10]Two months after the informal "referral" to the Maryland state court, Poole also filed a petition to amend the judgment before the Maryland state court. As Poole's counsel explained to this panel at oral argument, the filing provided a more formal vehicle by which Judge Missouri could exercise jurisdiction over the question.

*Dotson*, 469 F. Supp. 2d 329, 333 (D. Md. 2007).[11] Thus, "[i]n an effort to avoid such a patently unfair result," the court found its exercise of jurisdiction proper. *Id.*

The court next considered the applicability of the savings clause of § 2255. It recognized that this court has found the clause to "appl[y] in only very limited circumstances." *Id.* The district court properly cited the controlling test in this circuit:

> [Section] 2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*In re Jones*, 226 F.3d at 333-34. The district court concluded that though "Poole cannot satisfy the exact standard announced in *Jones*[,] . . . the rationale behind the *Jones* decision is favorably applicable to Poole's situation." *Poole v. Dotson*, 469 F. Supp. 2d at 335. The district court read *Jones* to stand more generally for the proposition that a "fundamental defect" occurs when "an individual is incarcerated for conduct that is not criminal, but through no fault of his own, has no source of redress." *Jones*, 226 F.3d at 333 n.3 (explaining the rationale behind the comparable rule in our sister circuits). Because the district court found as a fact that Poole had been diligent in pursuing his rights pro se, and because "Poole stands incarcerated as a career offender when he is not in fact a career offender," the court concluded that he "had no source of redress" and should be permitted to pursue a § 2241 petition via the savings clause of § 2255. *Poole v. Dotson*, 469 F. Supp. 2d at 335.

---

[11]The Kentucky district court had likewise exercised jurisdiction over Poole's first § 2241 petition, but failed to reach the merits of the petition because it found the savings clause inapplicable. *See Poole v. Barron*, No. 04-CV-095-KKC, slip op. at 4.

Finally, on the merits of Poole's § 2241 petition, the district court held that Judge Missouri's order vacating Poole's sentence rendered the career-offender enhancement inapplicable. Because Poole was therefore "innocent of [his original] sentence," the court vacated that sentence and resentenced him without the enhancement. *Id.* at 339. Poole was resentenced to 135 months' imprisonment, and, over the objection of the government, released from custody. The government timely appealed.

## II.

## A.

We begin, as we must, with the question of whether the district court properly exercised jurisdiction[12] over Poole's second § 2241 habeas petition. "[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (internal quotations omitted). We review de novo the district court's assumption of jurisdiction over the habeas petition. *See United States v. Barton*, 26 F.3d 490, 491 (4th Cir. 1994).

Habeas petitions are usually filed under § 2255 in the court that imposed the prisoner's sentence. When § 2255 "appears . . . inadequate or ineffective to test the legality of his detention," § 2255(e), however, a federal prisoner may seek habeas relief from the court in the district of his confinement under § 2241. *In re Jones*, 226 F.3d at 333-34.

Section 2241 begins, "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any cir-

---

[12]The Supreme Court has suggested that the meaning of the term "jurisdiction," as used in the habeas statute, is distinct from "the sense of subject-matter jurisdiction of the District Court." *Rumsfeld v. Padilla*, 542 U.S. 426, 434 n.7 (2004). We have no occasion in this case to delve further into the precise meaning of the term, it sufficing to say that "jurisdiction" as used here is a sine qua non of addressing the merits of the petition. *See Strait v. Laird*, 406 U.S. 341, 343 (1972).

cuit judge within their respective jurisdictions." § 2241(a). A § 2241 petition should name as respondent "the person who has custody over [the prisoner]." § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained.").[13] As the Supreme Court explained long ago, "these provisions contemplate a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, that he may be liberated if no sufficient reason is shown to the contrary." *Wales v. Whitney*, 114 U.S. 564, 574 (1885) (emphasis added). This "immediate custodian rule" is the default, and is "general[ly] applicab[le] . . . to habeas petitions challenging physical custody." *Padilla*, 542 U.S. at 436.

The rule governing jurisdiction naturally follows from the "immediate custodian rule": a district court properly exercises jurisdiction over a habeas petition whenever it has jurisdiction over the petitioner's custodian. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 495 (1973). The question of whether the Maryland federal district court had jurisdiction over Poole's § 2241 petition turns, therefore, on whether Poole's "custodian" was the warden of the Maryland state prison, over whom the Maryland federal district court has jurisdiction, or the warden of the Kentucky federal prison, Poole's "original place of incarceration" to which he was slated "to return . . . at [the] conclusion of proceedings [before the Maryland federal district court]," J.A. 85, over whom the court does not have jurisdiction.

B.

The government argues that the district court wrongly exercised jurisdiction over Poole's § 2241 petition because neither its issuance of the writ of habeas corpus ad testificandum nor its order keeping Poole in Maryland transmuted Poole's temporary presence in the district into a permanent stay that effected a change in custodian. We agree.

---

[13]The term "custody" is not defined in the statute.

1.

This court has not had the occasion to address the question of whether an extraterritorial writ of habeas corpus ad testificandum changes the identity of a prisoner's "immediate custodian" for purposes of § 2241 jurisdiction. This court has held, however, in a related context, that the writ of habeas corpus ad prosequendum, issued to bring a prisoner to his own trial, works a "mere[ ] loan[ ] [of] the prisoner to federal authorities" and does not effectuate a change in custodian for purposes of the federal statute criminalizing escape from federal custody, 18 U.S.C. § 751(a). *See United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998); *see also Pelley v. Matthews*, 163 F.2d 700 (D.C. Cir. 1947) (holding that a writ of habeas corpus ad prosequendum does not effect a change in custodian). Insofar as the writs of habeas corpus ad prosequendum and habeas corpus ad testificandum are derived from adjacent language in the same statutory subsection, *see* § 2241(c)(5), and because their "statutory antecedents . . . are exactly the same," *Muhammad v. Warden, Baltimore City Jail*, 849 F.2d 107, 114 (4th Cir. 1988), it is reasonable to believe that the writ of habeas corpus ad testificandum would likewise be a "mere[ ] loan[ ]" that does not effect a change in custody. *See Evans*, 159 F.3d at 912.

Moreover, a number of our sister circuits have directly addressed the effect on custody wrought by issuance of a writ of habeas corpus ad testificandum. All agree that custody remains in the original place of incarceration. The Ninth Circuit case of *Miller v. Hambrick*, 905 F.2d 259 (9th Cir. 1990), is emblematic. In *Miller*, a federal prisoner serving time in Texas was called by a California federal court to testify in a tax case. The prisoner was moved to a detention center in Los Angeles. Once he arrived, the prisoner filed a § 2241 petition in the Central District of California, seeking relief from his incarceration. The district court dismissed the petition for lack of jurisdiction. On appeal, the Ninth Circuit affirmed, explaining:

> The standard writ [of habeas corpus ad testificandum], requiring transfer of a prisoner to another district in order to testify, acknowledges that the prisoner is held under the custody of the person to whom the writ issues and authorizes only "safe and secure conduct" of the prisoner to where he

will testify. The writ specifies that "immediately" after giving his testimony the prisoner shall be returned to the person holding him. The writ authorizes a trip[,] not a change of custodians.

*Id.* at 262. *See also United States ex rel. Quinn v. Hunter*, 162 F.2d 644 (7th Cir. 1947); *Rheuark v. Wade*, 608 F.2d 304 (8th Cir. 1979).

Poole concedes that the weight of historical authority is against him, but argues that the Supreme Court's recent discussion of the "immediate custodian rule" in *Padilla* supports the district court's assumption of jurisdiction over his § 2241 petition. We disagree and read *Padilla* to substantially support our conclusion. A brief discussion of that case demonstrates the point.

Jose Padilla was apprehended by federal agents in Chicago as he stepped off a plane from Pakistan. The agents were executing a material witness warrant that had been issued by the United States District Court for the Southern District of New York, seeking Padilla's testimony in connection with its grand jury investigation into the terrorist attacks of September 11, 2001. Padilla was then transferred to New York and held in federal custody. Before being called to testify, however, Padilla was designated an enemy combatant by order of the President, and moved by direction of Secretary of Defense Donald Rumsfeld to the Consolidated Naval Brig in Charleston, South Carolina.

Padilla filed a § 2241 motion in the Southern District of New York, naming, inter alia, Secretary Rumsfeld and the Commander of the Naval Brig in Charleston as respondents. The government moved to dismiss the petition for lack of jurisdiction, arguing that only the brig Commander was a proper respondent, and, since the district court in New York did not have jurisdiction over the Commander of the brig in Charleston, the district court likewise had no jurisdiction to hear the petition.

The district court in New York rejected the government's arguments, finding Secretary Rumsfeld to be a proper respondent because of his personal involvement in Padilla's custody, and therefore found that it could exercise jurisdiction over the petition under New York's

long-arm statute. On appeal, the Second Circuit agreed with the lower court's jurisdictional analysis. *Padilla v. Rumsfeld*, 352 F.3d 695, 705-08 (2d Cir. 2003).

The Supreme Court reversed, finding that Rumsfeld was not a proper respondent to Padilla's petition and that the district court in New York did not properly exercise jurisdiction over the petition. *Padilla*, 542 U.S. at 430. The Court parried Padilla's attempts to distinguish the "unique facts" of his case, instead affirming that the default "immediate custodian rule" controlled Padilla's petition just as it does the core of habeas petitions under § 2241. *Id.* at 436. The Court also rejected the Court of Appeals' conclusion that Secretary Rumsfeld was an appropriate respondent because he exercised the "legal reality of control" over Padilla. *Id.* at 437-48. Instead, the Court held that "identification of the party exercising legal control only comes into play when there is no immediate physical custodian with respect to the challenged 'custody.' In challenges to present physical confinement, we reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *Id.* at 439. The Court therefore concluded that only the brig Commander, not Secretary Rumsfeld, was an appropriate respondent to Padilla's petition. *Id.* at 442.

The Court went on to explain that selection of the proper respondent is critical to the question of jurisdiction because, "[i]n habeas challenges to present physical confinement, . . . the district of confinement is *synonymous* with the district court that has territorial jurisdiction over the proper respondent." *Id.* at 444. Combining the issues of proper respondent and jurisdiction, the Court summarized that the procedure in § 2241 cases is governed by "a simple rule": "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Padilla*, 542 U.S. at 447. Because Padilla filed his petition in a different district than that of his "warden," the brig Commander, the Court held that the district court lacked jurisdiction to hear it. *Id.*

Here, Poole seizes upon certain language from *Padilla* to argue that the warden of the Maryland state prison was his "immediate custodian" and therefore the proper respondent to his § 2241 petition.

Poole argues that the warden of the prison in Kentucky in which he had been serving his sentence was a mere "distant custodian," Appellee's Br. at 28, akin to the "Attorney General or some other remote supervisory official" denounced as an inappropriate respondent in *Padilla*. *See Padilla*, 542 U.S. at 435.

Poole takes this language from *Padilla* out of context. As an initial matter, the *Padilla* Court drew a contrast between a prison warden as "immediate custodian" and a federal agency appointee with only a nominal connection to a petitioner. This demarcation does not directly inform the question before us, which is a matter of deciding *which warden*, each of whom had control over Poole's body at some point, was the "immediate custodian."

Moreover, the *Padilla* Court explained that the immediate custodian rule "serves the important purpose of preventing forum shopping by habeas petitioners. Without it . . . . [t]he result would be rampant forum shopping." *Id.* at 447. This purpose would be thwarted by a rule allowing a prisoner to file a § 2241 petition anytime he is able to secure a hiatus to another jurisdiction. Indeed, the facts of this very case demonstrate the point. Poole had already had an opportunity to seek habeas relief in his first § 2241 petition, filed in Kentucky. Having had his day in court and lost, Poole was able to procure a second opinion by filing another, substantially similar petition in a different jurisdiction. This is precisely the kind of confusion the *Padilla* Court warned against: "district courts with overlapping jurisdiction[ ] and the very inconvenience, expense, and embarrassment Congress sought to avoid when it added the jurisdictional limitation [on § 2241] 137 years ago." *Id.*

Followed to its logical end, Poole's proposed rule might encourage the proliferation of § 2241 filings by prisoners testifying in jurisdictions outside their district of incarceration. Recognizing this danger, Poole suggests that we could craft a rule recognizing only a limited exception to the standard "district of confinement" test, *id.*, allowing the district court that originally sentenced the prisoner to also exercise jurisdiction over a § 2241 petition. There is simply nothing in either the language of the habeas statute or the caselaw interpreting it to support our carving out a tailor-made exception to provide Poole with the relief he seeks. Indeed, Poole's proposed exception is not substan-

tially different from the statutory relief granted by Congress when it first enacted § 2255, allowing an avenue for habeas petitions to be filed with the original sentencing judge. Absent statutory authority, we decline to transplant this feature of § 2255 onto the § 2241 habeas scheme.

2.

Neither do we find the extraordinary actions of the district court—sequestering Poole in Maryland for the sole purpose of solidifying its own jurisdiction—a proper circumvention of the immediate custodian rule contemplated by statute and longstanding precedent.

The district court justified its exercise of jurisdiction based on a "necessity" rationale of its own creation, relying on the Kentucky federal district court's suggestion that "examination of the events of 1997 . . . are issues properly addressed by the Maryland trial and/or appellate courts," *Poole v. Barron*, No. 04-CV-095-KKC, slip op. at 8. In light of this suggestion, and the reality that a denial of Poole's petition may very well "foreclose the possibility of any court considering the petition on its merits," the district court found jurisdiction "[i]n an effort to avoid such a patently unfair result." *Poole v. Dotson*, 469 F. Supp. 2d at 333.

Tellingly, neither Poole in his brief nor the district court itself cites to any authority suggesting that jurisdiction that would otherwise be improper may nevertheless lie based on necessity or a weighing of the equities. Indeed, the Supreme Court has long held the opposite: "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court is to presume, therefore, that a case lies *outside* its limited jurisdiction unless and until jurisdiction has been shown to be proper. *See id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799)).

We can find no constitutional or statutory font for the power exercised by the district court here. Holding Poole in Maryland for the express purpose of securing jurisdiction over his forthcoming § 2241 petition was simply insufficient to circumvent the immediate custo-

dian rule and create jurisdiction where there was none. We therefore conclude that neither the issuance of the writ of habeas corpus ad testificandum nor the retention of Poole in the district conferred jurisdiction on the Maryland federal district court.

III.

Because we hold that the district court did not properly exercise jurisdiction over Poole's § 2241 petition, we have no occasion to address its legal conclusions regarding either the applicability of the savings clause of § 2255 to these facts or the merits of Poole's § 2241 petition. We do, however, wish to express some concern regarding two procedural anomalies that occurred below.

First, we note that the district court, at the ad testificandum hearing, allowed Poole to abandon the very motion he was there to testify about, a motion Poole himself recognized was unavailing, and substitute instead a request to be held in Maryland to give him time to file a different motion altogether.[14] Even if the district court was correct in finding that Poole's maneuver was not an intentional "transparent manipulation of the court system," J.A. 105, the end result was the same—Poole got a second bite at the § 2241 apple by bootstrapping a § 2241 petition onto an admittedly questionable and quickly abandoned motion to amend the 1997 judgment.

Second, considering the numerous legal hurdles Poole faced before his petition could be heard, let alone granted, the process might have been better served had he not been released prior to our being afforded the opportunity to consider these issues of first impression. Of course, this situation was exacerbated by the government's failure to seek a stay of Poole's release with this court. But because Poole has already been resentenced and released, we are now in the uncomfortable position of ordering reinstatement of the sentence of a freed man.

---

[14]Nor was the government afforded any time to prepare an argument that Poole should not be detained in Maryland. *See* J.A. 98 ("Your Honor, I'm not sure why we're here. I thought we were here on the defendant's Motion for Reconsideration."); J.A. 101 ("The Government hasn't had an opportunity to even review this.").

## IV.

Because we find that Poole's immediate custodian remained the warden of the Kentucky prison in which he was permanently confined, we hold that the district court did not properly exercise jurisdiction over this action. Accordingly, we reverse the decision of the district court and remand with instructions to reinstate Poole's original sentence of 262 months' imprisonment.

*REVERSED AND REMANDED WITH INSTRUCTIONS*